**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ROBERT HOSSFELD and WES NEWMAN, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:24-cv-02613 |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Allstate Insurance Company ("Allstate") hereby files its Answer and Affirmative Defenses to the Complaint filed by plaintiffs Robert Hossfeld ("Hossfeld") and Wes Newman ("Newman") (together, "Plaintiffs"), and states as follows:

1.    Plaintiffs Robert Hossfeld and Wes Newman have each been on the National Do Not Call Registry for more than four years, but despite repeated do-not-call requests, Allstate and/or those on its behalf keep calling their cell phones to advertise and sell Allstate goods and services.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore denies the same.

2.    The reasons Plaintiffs continue to receive calls is that Allstate's internal do-not-call ("DNC") practices do not properly track the requirements of the Telephone Consumer Protection Act ("TCPA"), and because Allstate has not properly implemented the policies it has.

**ANSWER**:    Allstate denies the allegations in Paragraph 2.

3.      For example, the TCPA requires that sellers and those that make calls on their behalf coordinate internal-do not-call lists, in order to effectively stop calls made on their behalf. *In re TCPA*, 20 FCC Rcd. 13664, 13667-68 (2005); *United States v. Dish Network*, *LLC*, 954 F.3d 970, 976 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021).

**ANSWER**:    Allstate states that Paragraph 3 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 3.

4.      However, Allstate does not coordinate DNC requests among it, its agents, and their (sub)vendors as required by the TCPA, let alone ensure that those telemarketing on its behalf scrub their call lists against a comprehensive internal DNC list or are properly trained in such compliance.

**ANSWER**:    Allstate denies the allegations in Paragraph 4.

5.      Additionally, Allstate's do-not-call policy permits calls to phone numbers that are on an internal DNC list, if the consumer provided prior "express written invitation or consent."

**ANSWER**:    Allstate states that its do-not-call policy and its provisions speak for themselves, and denies any allegations in Paragraph 5 that are inconsistent therewith.  To the extent that Paragraph 5 makes for legal conclusions, Allstate is not required to answer, and therefore denies the same.

6.      However, the TCPA prohibits making <u>any</u> telemarketing call to a person who has previously asked not to receive such calls; no "express written invitation or consent" exception exists. 47 C.F.R. § 64.1200(d). Moreover, when consent applies in *other* TCPA contexts, the kind of generic leads on which Allstate permits its telemarketers to purchase for "consent" purposes are insufficient. *In re Urth Access, LLC*, 37 FCC Rcd. 14133, ¶ 16 (2022); *Closing the Lead Generator*

*Loophole Order*, 2023 WL 8826682, at *7-13 (FCC Dec. 18, 2023) (labelling such practices an "abuse").

**ANSWER**:    Allstate states that Paragraph 6 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 6.

7.    Plaintiff Hossfeld has sued Allstate for IDNC violations thrice before; this is his fourth suit. Neither of Hossfeld's prior actions caused Allstate to change its policies or practices, and Hossfeld has continued to receive Allstate telemarketing calls.

**ANSWER**:    Allstate admits that Hossfeld has sued Allstate three times for alleged TCPA violations.  Allstate denies the remaining allegations of Paragraph 7.

8.    In Plaintiff Hossfeld's most recent lawsuit against Allstate, the Court entered summary judgment for Plaintiff, *Hossfeld v. Allstate*, No. 20-7091 (N.D.Ill Mar. 28, 2024), holding that Allstate's agents and their telemarketers are "agents" within the meaning of the Restatement (3d) of Agency. The Court also found the conduct to be willful, and that Allstate may therefore be subject to treble damages. *See* 20-7091 Action Dkt. 282.

**ANSWER**:    Allstate admits that in Plaintiff Hossfeld's most recent lawsuit against Allstate, captioned *Hossfeld v. Allstate*, No. 20-7091 (N.D.Ill Mar. 28, 2024) ("*Hossfeld I*"), the Court entered an Order for summary judgment, the memorandum and opinion of which speak for themselves. Allstate denies any allegations inconsistent therewith.

9.    Although Plaintiff Hossfeld requested such, the summary judgment order did not resolve post-filing telemarketing calls Plaintiff has received, at least one of which came from the same Transfer Kings/Atlantic telemarketing outfit that called him in relation to the 20-7091

Action. Plaintiff Newman, likewise, seeks redress for improper telemarketing violations he incurred on behalf of Allstate.

**ANSWER**: Allstate states that the docket in *Hossfeld I* speaks for itself and denies any allegations in Paragraph 9 that are inconsistent therewith. Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 9 that Plaintiff Hossfeld received at least one call from Transfer Kings/Atlantic, and therefore denies the same. Allstate denies any remaining allegations in Paragraph 9.

10. Because Allstate's TCPA violations are happening on a massive scale, Plaintiffs bring this lawsuit to secure money damages and injunctive relief on behalf of themselves and others who similarly incurred internal do-not-call violations by or on behalf of Allstate.

**ANSWER**: Allstate denies the allegations in Paragraph 10 and denies that Plaintiffs are entitled to any relief whatsoever.

### Parties

11. Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber for the personal cellular telephone that received the calls at issue. Plaintiff's cell phone service is on a family plan; it is not associated with a business.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the same.

12. Plaintiff Wes Newman is a natural person who lives in Cook County, Illinois. Plaintiff is the sole subscriber and only regular user for his cell phone that received the calls alleged herein. Plaintiff is a residential subscriber for this phone, which is a non-business number. He received the calls at issue in this District.

4

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies the same.

13.    Defendant Allstate Insurance Company is a Delaware corporation headquartered in Northbrook, Illinois, in this District. Allstate is a citizen of Illinois.

**ANSWER**:    Allstate admits it is headquartered in Illinois and it is a citizen of Illinois. Allstate denies the remaining allegations in paragraph 13.

14.    Allstate is subject to general jurisdiction in the Northern District of Illinois.

**ANSWER**:    Paragraph 14 contains conclusions of law as to which no response is required.  To the extent a response is required, Allstate admits that it is subject to general jurisdiction in the Northern District of Illinois.

<strong>Jurisdiction &amp; Venue</strong>

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law.

**ANSWER**:    Paragraph 15 contains conclusions of law as to which no response is required.  To the extent a response is required, Allstate admits that the Court has subject matter jurisdiction over the claims brought under the TCPA.

16.    Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA. Further, Plaintiffs allege nationwide classes, which will result in at least one class member residing in a state different from Defendant.

**ANSWER**:    Allstate admits that Plaintiffs have made those allegations set forth in Paragraph 16, but denies that those allegations are true and accurate.  Further, Allstate denies the legal conclusion that Allstate has violated the TCPA, that any class should be certified in this action, or that Plaintiffs or any class member are entitled to any relief whatsoever.

17.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Allstate is a resident of this District, because Plaintiff Newman received the calls at issue while in this District, and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. For example, Allstate's employee in charge of IDNC compliance, Valerie Lim, oversees such from within this District.

**ANSWER**:    Allstate admits that it is a resident of this District, and that Plaintiffs have alleged that events and omissions giving rise to their claims occurred in this District.  Allstate denies the remaining allegations of Paragraph 17.  Further, to the extent that Paragraph 17 makes for a legal conclusion, Allstate is not required to answer, and therefore denies the same.

### TCPA Background

18.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "'telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

**ANSWER**:    Allstate states that Paragraph 18 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 18.

19.     Relevant here, the TCPA prohibits initiating any telemarketing call unless the person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d). This includes, inter alia, having a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list, identifying the name of the caller during each call, the name of the person or entity on whose behalf the call was made, and associated phone or address information, and actually honoring do-not-call requests within a reasonable time from the date such request is made. *Id.*

**ANSWER**:     Allstate states that Paragraph 19 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 19.

20.     The TCPA also prohibits initiating any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an artificial or prerecorded voice, to a cellular telephone number or residential line. 47 C.F.R. § 64.1200(a)(2)-(3).

**ANSWER**:     Allstate states that Paragraph 20 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 20.

21.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law

7

principles of agency for TCPA violations committed by third-party telemarketers ... under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et. al for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

**ANSWER**:    Allstate states that Paragraph 21 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 21.

22.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, including as described herein as to Allstate, the seller is properly deemed to have initiated the call through the person or entity that actually placed it.

**ANSWER**:    Allstate states that Paragraph 22 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 22.

## Facts

### Plaintiff Hossfeld

23.    Allstate has failed to ensure that Hossfeld's do-not-call requests are honored, which has led to him suing it previously for internal DNC violations under the TCPA—most recently in *Hossfeld v. Allstate Ins. Co.*, No. 1:20-cv-07091 (N.D. Ill.) (the "20-7091 Action").

**ANSWER**:    Allstate admits that Plaintiff Hossfeld sued Allstate in *Hossfeld I* but denies the remaining allegations in Paragraph 23.

24.    After Hossfeld made a do-not-call request to Allstate in approximately mid-2020, Allstate added Plaintiff's phone number to its internal do-not-call list on July 10, 2020.

8

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to whether Hossfeld made a do-not-call request to Allstate in approximately mid-2020. However, Allstate admits that Hossfeld appeared on Allstate's internal do-not-call list by no later than July 10, 2020. Allstate denies the remaining allegations in Paragraph 24.

25. Hossfeld made other do-not-call requests in response to unsolicited Allstate telemarketing calls he received, too, such as on November 12, 2020, November 13, 2020, November 23, 2020, and November 24, 2020. Hossfeld also made do-not-call requests to Allstate directly, such as in complaints he filed against it on December 1, 2020, February 1, 2021, and March 26, 2021.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 25, and therefore denies the same.

26. However, Allstate does not coordinate do-not-call requests amongst all those telemarketing on its behalf, and it does not ensure that they are properly scrubbing their call lists against it to avoid calling Hossfeld's and others' phone numbers.

**ANSWER**: Allstate denies the allegations the allegations in Paragraph 26.

27. As a result, Hossfeld has continued to receive Allstate telemarketing calls despite his prior do-not-call requests and despite being on Allstate's internal DNC list.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies the same.

28. For example, starting in or around November 2020, an Allstate sub-vendor, Transfer Kings, began using its call center, Atlantic, to call Hossfeld's phone to encourage the purchase of Allstate insurance.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies the same.

29. Transfer Kings/Atlantic made twelve calls to Hossfeld's phone number to telemarket for Allstate insurance that were subject to Hossfeld's 20-7091 Action:

| Date/Approx. Time | Caller ID |
|---|---|
| November 11, 2020, at 4:27 p.m. | (281)724-2161 |
| November 12, 2020, at 9:28 a.m. | (979)764-0015 |
| November 12, 2020, at 10:51 a.m. | (512)292-7410 |
| November 12, 2020, at 3:19 p.m. | (713)928-6218 |
| November 12, 2020, at 5:56 p.m. | (254)719-2300 |
| November 13, 2020, at 10:35 a.m. | (281)334-6255 |
| November 13, 2020, at 11:22 a.m. | (817)596-0033 |
| November 13, 2020, at 11:56 a.m. | (817)596-0033 |
| November 20, 2020 | (325)216-5148 |
| November 23, 2020, at 1:44 p.m. | (214)765-9742 |
| November 24, 2020, at 2:40 p.m. | (214)765-9742 |
| February 8, 2021, at 3:54 p.m. | (254)749-2314 |

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies the same.

30. On March 28, 2024, the Court in the 20-7091 Action granted summary judgment on liability and willfulness under the TCPA's internal DNC regulation, 47 C.F.R. § 64.1200(d), for Hossfeld as to the above twelve calls. *See* 20-7091 Action Dkt. 282.

**ANSWER**: Allstate states that the docket in *Hossfeld I* speaks for itself and denies any allegations in Paragraph 30 that are inconsistent therewith.

31. However, the scope of the 20-7091 Action did not extend to other calls Plaintiff received by or on behalf of Allstate, and for which he now seeks redress through this action.

**ANSWER**: Allstate states that the docket in *Hossfeld I* speaks for itself and denies any allegations in Paragraph 31 that are inconsistent therewith.

32. For example, on April 7, 2021, at approximately 10:56 a.m., Transfer Kings/Atlantic called Hossfeld's telephone number from caller ID (254) 741-9102.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies the same.

33. When Plaintiff Hossfeld answered, the representative on the other end of the line— who identified himself as "Frank"—indicated that he was calling on behalf of Allstate, and proceeded to solicit Plaintiff for a quote for Allstate insurance.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore denies the same.

34. After Hossfeld answered a series of questions, "Frank" then transferred the call to an insurance agent who identified himself as "Alfonso Perez," and who informed Plaintiff that he writes insurance "with Allstate." Mr. Perez was an agent with an Allstate insurance agency owned by Daniel Gilmond.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore denies the same.

35. Mr. Perez then proceeded to try to sell Hossfeld Allstate insurance.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore denies the same.

36. During the call, Mr. Perez requested that Allstate process and email Hossfeld a quote for Allstate insurance. Allstate obliged, and issued Hossfeld the quote for insurance attached as Exhibit A, under the fake name used during the call.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and therefore denies the same.

37.     At the end of the call on April 7, 2021, Plaintiff Hossfeld told Mr. Perez that he kept getting calls despite repeated requests to stop, and asked that the calling cease.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37, and therefore denies the same.

38.     As another example, on September 3, 2021, Hossfeld received a call from caller ID (330) 894-5403.

**ANSWER**:     Allstate denies the allegations in Paragraph 38.

39.     When Hossfeld answered, the person on the other end identified himself as "Jason White with Allstate," and proceeded to try to sell Hossfeld Allstate insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, and therefore denies the same.

40.     The call on September 3, 2021, disconnected after Mr. White asked Plaintiff Hossfeld several basic questions aimed at providing him a quote.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and therefore denies the same.

41.     As another example, Hossfeld received another telephone call on September 22, 2021, from caller ID (281) 997-5757.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41, and therefore denies the same.

42.     After Hossfeld answered, the person on the other end of the line again stated that they were with "Allstate," and proceeded to try to sell Allstate insurance to Plaintiff.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and therefore denies the same.

43.     After Hossfeld answered a similar set of basic questions, he was transferred to Richard Guerra of the Justin Powell Allstate agency, who similarly proceeded to try to sell Plaintiff Allstate insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore denies the same.

44.     During the call, Mr. Guerra requested that Allstate process and email Plaintiff a quote for Allstate insurance. Allstate obliged, and issued Hossfeld the quote for insurance attached as Exhibit B.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, and therefore denies the same.

45.     As another example, on January 11, 2023, at approximately 10:09 a.m., Hossfeld received a call from caller ID (254) 728-3190.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45, and therefore denies the same.

46.     When Hossfeld answered, the representative proceeded to try to sell insurance to Plaintiff. When Hossfeld asked who they were calling for, the representative indicated that the call was for "Michael"—which is the same name used in several of the calls at issue in the 207091 Action that Hossfeld received. Thus, on information and belief, this call was made for the purposes of encouraging the purchase of Allstate insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46, and therefore denies the same.

47.     As another example, on January 20, 2023, at approximately 9:33 a.m., Hossfeld received a call from caller ID (254) 743-3921.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47, and therefore denies the same.

48.     When Hossfeld answered, the representative asked for "Michael Bradley," which is the same name used in several of the calls at issue in the 20-7091 Action that Plaintiff received.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, and therefore denies the same.

49.     The representative said he was with "USAutoCare.com", and indicated that the was calling to sell insurance for Allstate, among others.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, and therefore denies the same.

50.     On information and belief, "USAutoCare.com" was a fake name provided to mask the true source of the calling.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50, and therefore denies the same.

51.     When the representative said he would call Hossfeld back after unsuccessful attempts to transfer Plaintiff to an insurance agent, Plaintiff told him to not call back. The representative then abruptly hung up.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, and therefore denies the same.

52.     The above calls were all made for the purpose of encouraging the purchase of Allstate insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore denies the same.

53.     Hossfeld has received more calls than the ones delineated here that were initiated for the purpose of encouraging the purchase of Allstate goods, products, or services, which he expects to identify in discovery.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore denies the same.

54.     Hossfeld did not provide prior express invitation or permission or consent for these calls. To the contrary, he has repeatedly asked not to receive calls by or on behalf of Allstate.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore denies the same.

**Plaintiff Newman**

55.     After Newman made prior do-not-call requests to Allstate, including in approximately August 2021, Allstate added Plaintiff's phone number to its internal do-not-call list no later than August 30, 2021.

**ANSWER**:     Allstate denies the allegations in Paragraph 55.

56.     However, Allstate does not coordinate do-not-call requests amongst all those telemarketing on its behalf, and it does not ensure that they are properly scrubbing their call lists against it to avoid calling Newman's and others' phone numbers.

**ANSWER**:     Allstate denies the allegations the allegations in Paragraph 56.

57.     As a result, Newman has continued to receive Allstate telemarketing calls despite his prior do-not-call requests.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies the same.

58.     For example, on February 2, 2022, at approximately 11:10 a.m., Newman received a call from caller ID (239) 667-6621.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and therefore denies the same.

59.     When Newman answered, the representative on the other end of the line introduced himself as "Mark with Allstate," who proceeded to try to sell Newman auto insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and therefore denies the same.

60.     "Mark" confirmed during the call that he was calling on behalf of Allstate; however, the call terminated without Newman being transferred to an agent.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60, and therefore denies the same.

61.     As another example, on February 10, 2022, at approximately 11:43 a.m., Newman received a call from caller ID (863) 722-3514.

**ANSWER**:     Allstate admits that Newman received a call pursuant to consent to be contacted at his cell phone number that he gave on or about December 3, 2021.  Allstate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61, and therefore denies the same.

62.     When Newman answered, a representative on the other end of the line introduced herself as "Amy with Allstate," who proceeded to solicit Newman auto insurance following a similar script to the one used by "Mark" the week prior. This was because both calls were made by the same caller.

16

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and therefore denies the same.

63. After Newman answered some questions, "Amy" transferred Newman to someone who said they were a "senior supervisor" named "Jeff" who subsequently transferred Newman to Tiffani Finley of the Robert Wilson Allstate agency. Ms. Finley similarly proceeded to try to sell Newman Allstate insurance.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and therefore denies the same.

64. Durin [*sic*] the call, Ms. Finley requested that Allstate process and email Newman a quote for Allstate insurance. Allstate obliged, and issued Newman the quote for insurance attached as Exhibit C.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64, and therefore denies the same.

65. Shortly thereafter on February 10, 2022, Newman emailed Mr. Wilson, Ms. Finley, and Allstate directly to put them on notice that the continued calling was illegal and made despite a prior do-not-call request.

**ANSWER**: Allstate denies the allegations in Paragraph 65.

66. Despite this, on March 21, 2022, at approximately 12:25 p.m., Newman received a call from caller ID (972) 424-6175.

**ANSWER**: Allstate admits that Newman received a call pursuant to his consent to be contacted at his cell phone number that he gave on or about December 3, 2021, and that the call was made pursuant to his request for a follow-up. Allstate lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66, and therefore denies the same.

67.     When Paintiff [*sic*] Newman answered, he was connected with an individual who introduced herself as "Shelley" with Robert Wilson's Allstate agency, who said she was following up to see if it was a better time for Plaintiff to sign up with Allstate now.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, and therefore denies the same.

68.     Plaintiff notified Shelley about his prior do-not-call requests and desire to not receive calls telemarketing for Allstate.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68, and therefore denies the same.

69.     Shelley confirmed that other consumers had complained about similar unsolicited telemarketing calls.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, and therefore denies the same.

70.     As another example of the unsolicited Allstate calls to Plaintiff's number, on June 15, 2023, at approximately 4:46 p.m., Newman received a call from caller ID (305) 203-5471.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70, and therefore denies the same.

71.     When Newman answered, he was connected to an individual who identified herself as "Sam from Free Insurance Quotes," who tried to sell Newman auto insurance. However, the call terminated after "Sam" was unable to transfer Newman to an agent.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71, and therefore denies the same.

72.    The following day, June 16, 2023, at approximately 8:39 a.m., Newman received a call from the same caller ID, (305) 203-5471.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72, and therefore denies the same.

73.    When Plaintiff Newman answered, he was connected to an individual who identified himself as "Danny with Free Insurance Quotes," who again tried to sell Newman auto insurance. "Danny" confirmed he was with the same company that called Plaintiff the day prior; however, he abruptly terminated the call after being unable to transfer Newman to an agent.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73, and therefore denies the same.

74.    On information and belief, "Free Insurance Quotes" is a fake name provided to mask the true source of the calling.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and therefore denies the same.

75.    Later that afternoon, June 16, 2023, at approximately 2:57 p.m., Newman received a call from caller ID (678) 904-1770.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75, and therefore denies the same.

76.    When Newman answered, he was connected to a representative who said she was with "Free Insurance Quotes," who proceeded to try to transfer Newman to an agent for purposes of soliciting insurance.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and therefore denies the same.

77. Upon being transferred, Newman heard a prerecorded prompt say, "Great! I'll connect you to an agent!", before connecting him to a prerecorded phone tree that asked him to press "1" if he was insured by Allstate or "2" if he was not.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and therefore denies the same.

78. After Newman pressed "2", he heard a message say he was being transferred to Direct insurance (i.e., Direct Auto Insurance), which is a member of the Allstate group of companies. However, after Newman followed the prerecorded prompt to submit his ZIP code, the call thereafter abruptly disconnected.

**ANSWER**: Allstate admits that Direct Auto Insurance is a wholly owned subsidiary of The Allstate Corporation. Allstate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore denies the same.

79. Direct Auto Insurance publicly identifies itself as an Allstate company on its website, https://www.directauto.com. Thus, this call was made for the purpose of encouraging the purchase of Allstate products, goods, or services.

**ANSWER**: Allstate denies the allegations in Paragraph 79.

80. Newman thereafter called the (678) 904-1770 number back, and heard a voicemail prompt that listed (209) 441-4939 as its associated phone number.

**ANSWER**: Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and therefore denies the same.

81.     When Newman thereafter called this (209) 441-4939 number, he was connected to a prerecorded prompt that identified the telemarketer as Frogger Auto, which then transferred Newman to the same, prerecorded "Great! I'll connect you to an agent!" prompt he heard previously.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and therefore denies the same.

82.     This time, Newman pressed "1" to indicate that he was already an Allstate customer, and a prerecorded message said that he would be connected to Answer Financial, which is a member of the Allstate group of companies. Thus, these calls were designed to route call recipients to Allstate for the purpose of purchasing its products or services, regardless of how they answered the prompt.

**ANSWER**:     Allstate admits that Answer Financial is a wholly owned subsidiary of The Allstate Corporation. Allstate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 82, and therefore denies the same. Allstate denies the allegations in the second sentence of Paragraph 82.

83.     Answer Financial publicly identifies itself as an Allstate company on its website, https://www.answerfinancial.com/aboutus/carrierpartners/allstate.

**ANSWER**:     Allstate admits that Answer Financial is a wholly owned subsidiary of The Allstate Corporation. Allstate denies the remaining allegations in Paragraph 83.

84.     Later that same day, June 16, 2023, at approximately 3:04 p.m., Newman received another call from the same caller ID, (678) 904-1770.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84, and therefore denies the same.

85.     When Newman answered, he was connected to a representative who said she was with "Free Insurance Quotes," who proceeded to transfer Newman to the same "Great! I'll connect you to an agent!" prompt as in the calls earlier that day.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85, and therefore denies the same.

86.     This time, Plaintiff pressed "1", and heard the same prerecorded message that played before. However, the call thereafter disconnected.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, and therefore denies the same.

87.     On information and belief, the reason Plaintiff was dropped from the transfers was because his phone number was on Allstate's internal DNC list, and Allstate or its agents scrubbed his phone number at the transfer rather than ensuring that it was scrubbed before the call, itself.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87, and therefore denies the same.

88.     Given the similarities between the calls Plaintiff received on June 15, 2023, and June 16, 2023, they were all made by the same caller.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and therefore denies the same.

89.     Newman notified Allstate directly about these unwanted calls, including via an email to its customer service email address and attorneys Frank Lukes and Mark Saltzman on June 16, 2023. Plaintiff again asked not to be called.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and therefore denies the same.

90.     On June 19, 2023, at approximately 12:24 p.m., Newman received a call from caller ID (940) 253-5078.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, and therefore denies the same.

91.     Upon Newman answering, a prerecorded message played, which indicated that the call came from "U.S. Autocare." That this was a prerecorded message, as opposed to a live person, was obvious to Plaintiff given the intonation and unnatural nature of the communication. However, the call soon disconnected before Plaintiff could speak with a live person.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and therefore denies the same.

92.     Newman called the (940) 253-5078 number back, and was ultimately connected to an individual who identified themselves as "Jessie with Allstate."

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and therefore denies the same.

93.     The June 19, 2023 call Newman received was made for the purpose of encouraging the purchase of Allstate goods and services.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, and therefore denies the same.

94.     After receiving this call on June 19, 2023, Newman again reached out to Allstate via email to notify it of the continued unwanted calling.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, and therefore denies the same.

95.     All of the above calls were made for the purpose of encouraging the purchase of Allstate insurance.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95, and therefore denies the same.

96.     Newman has received more calls than the ones delineated here that were initiated for the purpose of encouraging the purchase of Allstate goods, products, or services, which he expects to identify in discovery, including which used an artificial or prerecorded voice.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96, and therefore denies the same.

97.     Newman did not provide prior express invitation or permission or consent for these calls. To the contrary, he has repeatedly asked not to receive calls by or on behalf of Allstate.

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, and therefore denies the same.

**Additional Allegations**

98.     It is difficult to determine from whom Allstate calls originated, or that Allstate insurance is being solicited, because in many (but not all) cases Allstate's telemarketers fail to (a) identify themselves, (b) identify the name of the person or entity on whose behalf the calls are being made, or (c) provide a telephone number or address at which the person or entity may be contacted is material, as required under 47 C.F.R. § 64.1200(d)(4).

**ANSWER**:     Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98, and therefore denies the same.

99.     Absent identifying information being provided in the beginning of calls, call recipients have little idea who is calling them, or why.

**ANSWER**:     Paragraph 99 does not contain factual allegations to which Allstate must respond.  To the extent a response is required, Allstate denies the allegations in Paragraph 99.

100.     This is particularly true where Allstate's telemarketers frequently spoof their caller IDs to appear to be local to the call recipient, in order to trick consumers into answering calls they would not otherwise answer.

**ANSWER**:     Allstate denies the allegations in Paragraph 100.

101.     Allstate's telemarketers or marketing "lead generators" often intentionally refuse to say who they are, use fake names, and delay identifying what specific products or services they're selling until further into the call or after it is transferred to the "closer" sales agent, because they want to avoid accountability.

**ANSWER**:     Allstate denies the allegations in Paragraph 101.

102.     Allstate's agents, or those otherwise making calls on its behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiffs and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented— including as evidenced by the continued calls to Plaintiffs after they directly asked not to be contacted.

**ANSWER**: Allstate denies the allegations in Paragraph 102.

103.     During all relevant times, Allstate maintained the power and right of interim control over its agents' and caller's actions with respect to the telemarketing complained of herein.

**ANSWER**:     The allegations of Paragraph 103 make legal conclusions that Allstate is not required to answer, and therefore denies the same.

104.     Allstate maintains the right to terminate the agent, for any reason whatsoever, and it also maintains the sole right to alter the terms of its relationship with such parties at whim.

**ANSWER**:     The allegations of Paragraph 104 refer or relate to one or more unspecified contracts, agreements, or materials, which speak for themselves.  Allstate denies any allegations inconsistent therewith.  To the extent that the allegations in Paragraph 104 make legal conclusions, Allstate is not required to answer, and therefore denies the same.

105.     Allstate's agents—including those with whom Plaintiffs spoke as a result of the calling at issue—maintain exclusive written agent or agency agreements with Allstate, which grant Allstate control over, for example, the minutiae of how business is and may be generated on its behalf, the geographic scope of such, use of Allstate's tradename, and compliance and marketing practices, including with respect to telemarketing (and the use and form of such, such as approval of scripts, do-not-call practices, and use of artificial- or prerecorded-voice calls), TCPA compliance, use of vendors, and the extent to which such vendors must comply with Allstate's telemarketing-related practices, policies, and procedures.

**ANSWER**:     The allegations of Paragraph 105 refer or relate to one or more unspecified contracts, agreements, or materials, which speak for themselves.  Allstate denies any allegations inconsistent therewith.

106.     Allstate's agreement with its authorized agents specifically directs that the agent will act as its "agent" for the purposes of soliciting, selling, and servicing Allstate insurance, and that the agent shall be required to demonstrate knowledge of applicable rules and regulations (including as to the TCPA) upon Allstate's request. Allstate also has the right to access its agents' physical locations and records to review and ensure contractual and regulatory compliance.

26

**ANSWER**:    The allegations of Paragraph 106 refer or relate to one or more unspecified contracts, agreements, or materials, which speak for themselves. Allstate denies any allegations inconsistent therewith.

107.    Allstate also gave its agents and their vendors, including those to whom Plaintiffs spoke as a result of the calling at issue, access to its proprietary product and pricing information and approved the sale and quotation of its insurance products as a result of the calling at issue. The agents and their vendors that called Plaintiffs and other class members did not have their own inventory and were not resellers of any kind; they acted directly for Allstate.

**ANSWER**:    The allegations of Paragraph 107 refer or relate to one or more unspecified contracts, agreements, or materials, which speak for themselves. Allstate denies any allegations inconsistent therewith.

108.    Plaintiffs and other class members reasonably believed that the caller that called them had Allstate's authority for the calls at issue, based on Allstate's own actions—including through directly permitting the use of its tradenames during such calls, providing compensation for business derived from such calls, providing agents with proprietary pricing and product information for use to help sell its products and services during calls with prospective customers, and by retaining revenue and providing the administrative functions provided for as part of the plan the consumer purchased during such calling.

**ANSWER**:    Allstate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, and therefore denies the same.

109.    Allstate knew that its agents or their vendors were telemarketing on its behalf regardless of consumer do-not-call requests, and without having instituted proper procedures to stop calls to consumers who ask not to be contacted, yet it did nothing – or next to nothing – to prevent

27

or stop the calling at issue. Rather, instead of repudiating the calls and business derived therefrom, Allstate continued to "pass the buck" by deflecting complaints like Plaintiffs' and blaming its telemarketers for illegal calls, while at the same time continuing to knowingly enjoy the benefits of the marketing, including issuing quotes to call recipients and obtaining money through plans being purchased as a result.

**ANSWER**:     Allstate denies the allegations of Paragraph 109.

110.     Allstate had been sued repeatedly for similar TCPA violations prior to the calls to Plaintiff here, including by Plaintiff Hossfeld, but Allstate continued to engage in the conduct complained of herein despite having been put on notice of the violations.

**ANSWER**:     Allstate admits it has been sued for alleged TCPA violations, including with respect to the prior actions brought by Plaintiff Hossfeld. Allstate denies the remaining allegations of Paragraph 110.

111.     Allstate's actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

**ANSWER**:     Allstate denies the allegations in Paragraph 111.

112.     Allstate knowingly accepted benefits that originated through the nonconsensual telemarketing at issue. Allstate knowingly compensated its agents (and/or their telemarketing vendors) for such, Allstate accepted the advertising benefit in having its products and services solicited to Plaintiffs and other class members, and it further benefitted by retaining money paid by call recipients for the plans purchased as a result of the illegal calling at issue on an ongoing basis, thereby ratifying such.

**ANSWER**:     Allstate denies the allegations in Paragraph 112.

113.     Alternatively, to the extent Allstate claims it lacked full knowledge about every aspect of the telemarketing-based lead generation performed on its behalf, it failed to investigate further despite knowledge that would have caused a reasonable person to do so.

**ANSWER**:     Allstate denies the allegations in Paragraph 113.

114.     Allstate has long known that consumers are suffering TCPA violations as a result of its improper telemarketing and lead generation practices. *See, e.g., Abante Rooter & Plumbing, Inc. v. Allstate Ins. Co.*, No. 1:15-cv-09025 (N.D. Ill. filed Oct. 13, 2015) (Allstate paid $10.5 million to settle TCPA class action); *Hossfeld v. Allstate Ins. Co.*, No. 1:19-cv-03492 (N.D. Ill. filed May 24, 2019); *Landy v. Allstate Ins. Co.*, No. 1:19-cv-06830 (N.D. Ill. filed Oct. 15, 2019) (putative TCPA class action); 20-7091 Action.

**ANSWER**:     Allstate denies the allegations in Paragraph 114.

115.     Allstate, itself, has also long publicly acknowledged the exposure it and its partners face as a result of these calls, but has persisted in engaging in this unlawful telemarketing, anyway.

**ANSWER**:     Allstate denies the allegations in Paragraph 115.

116.     Allstate believes that it has no responsibility for telemarketing calls made by others on its behalf, to Plaintiffs.

**ANSWER**:     The allegations in Paragraph 116 make legal conclusions that Allstate is not required to answer, and therefore denies the same.

117.     Allstate believes that it has no responsibility to American consumers for telemarketing calls made by others on its behalf.

**ANSWER**:     The allegations in Paragraph 117 make legal conclusions that Allstate is not required to answer, and therefore denies the same.

118.    Allstate has the power to stop its insurance agents from making or engaging others to make noncompliant telephone calls to Plaintiffs and the classes, but refuses to do so.

**ANSWER**:    Allstate denies the allegations in Paragraph 118.

119.    Allstate has been active in lobbying and regulatory efforts aimed at attempting to relax the TCPA's requirements, and/or reduce or eliminate liability for TCPA violations. For example, in 2003 Allstate submitted comments urging the FCC not to adopt any Do Not Call Registry at all, and instead rely upon the company specific Do Not Call lists, which in its view were sufficient to "accomplish the objective of protecting consumers without unduly burdening the teleservices industry." Allstate continues to enjoy the benefits of illegal telemarketing in spite of the fact that the FCC has refused to adopt its requests and suggestions.

**ANSWER**:    To the extent that Allstate has submitted comments to the FCC, those communications speak for themselves and Allstate denies any allegations in Paragraph 119 inconsistent therewith.

120.    Allstate's violations were negligent. Alternatively, they were willful and knowing.

**ANSWER**:    Allstate denies the allegations in Paragraph 120.

121.    Plaintiffs and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, the Allstate calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Plaintiff and the classes. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

**ANSWER**:    Allstate denies the allegations in Paragraph 121.

**Class Action Allegations**

30

122. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following classes and subclass:

> IDNC Class: All persons in the United States (i) to whom more than one call was made for the purpose of encouraging the purchase of Allstate goods or services (including to find a marketing "lead" for Allstate goods or services) in any 12-month period, (ii) to a residential telephone number, (iii) where the phone number was on the do-not-call list of Allstate or its agents or (sub)vendors at the time of at least one such call.
>> Subclass: All persons in the IDNC class whose calls they received arose from the same Allstate (sub)vendors that called Plaintiffs (e.g., Transfer Kings/Atlantic).
>
> Robocall Class: All cellular subscribers and/or residential subscribers in the United States whose telephone number Allstate, or some third party on its behalf, called using an artificial or prerecorded voice, where prior to such call there existed no signed, written agreement with the recipient that included a disclosure informing the person signing that: (A) By executing the agreement, such person authorizes Allstate to deliver or cause to be delivered to the signatory telemarketing calls using an artificial or prerecorded voice; and (B) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

**ANSWER**: Allstate admits that Plaintiffs purport to bring this action on behalf of a class and subclass of plaintiffs; however, Allstate denies that this action may be properly adjudicated as a class action and further denies that Plaintiffs are entitled to any of the relief that they seek.

123. Upon information and belief, including based on the volume of calls Plaintiffs themselves have received and the numerous other lawsuits Allstate has faced based on similar allegations of voluminous, illegal calling in violation of the TCPA, and Allstate's national presence, there are tens of thousands of persons in each class and subclass.

**ANSWER**: Allstate denies the allegations in Paragraph 123.

124. Common questions of law or fact exist as to all members of the classes and subclass, and predominate over any questions solely affecting any individual member, including Plaintiffs. Such questions common to the classes include but are not limited to:

31

    a.   Whether Allstate established and implemented, with due care, reasonable practices and procedures to effectively prevent telemarketing in violation of the TCPA's do-not-call regulations;

    b.   Whether the calls to Plaintiff Newman and the Robocall Class were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    c.   Whether Allstate had valid prior express written consent of the Robocall Class, before they were called;

    d.   Whether Allstate should be liable for any calls made by third parties; and

    e.   Damages, including whether Allstate's violations were performed willfully or knowingly such that Plaintiff and the other class members are entitled to enhanced damages under 47 U.S.C. § 227(c)(5) and § 227(b)(3).

**ANSWER**:    Allstate denies the allegations in Paragraph 124, including all subparts.

125.   Plaintiffs' claims are typical of the claims of the other members of the class and subclass. The factual and legal bases of Defendant's liability to Plaintiffs and the other members of each class and subclass are the same: For the IDNC Class and Subclass, Defendant violated the TCPA by causing the residential number of each class and subclass member to be contacted more than once for telemarketing purposes despite the number's appearance on Allstate's or its agents' or downlines' internal do-not-call lists. For the Robocall Class, Allstate violated the TCPA by causing artificial- or prerecorded-voice telemarketing calls to be made to the phone number of each member of the class, without the requisite permission.

**ANSWER**:    Allstate denies the allegations in Paragraph 125.

126.    Plaintiffs will fairly and adequately protect the interests of the class and subclass members. Plaintiffs have no interests that might conflict with the interests of the class and subclass members. Plaintiffs are interested in pursuing these claims vigorously, and have retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

**ANSWER**:    Allstate denies the allegations in Paragraph 126.

127.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the class and subclass, such that joinder of all members is impracticable.

**ANSWER**:    Allstate denies the allegations in Paragraph 127.

128.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

**ANSWER**:    Allstate denies the allegations in Paragraph 128.

129.    Allstate has acted and failed to act on grounds generally applicable to Plaintiffs and the other class and subclass members, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual class members, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.

**ANSWER**:     Allstate denies the allegations in Paragraph 129.

130.    The identities of the classes and subclass are, on information and belief, readily identifiable from Defendant's and its agents' or (sub)vendors' records.

**ANSWER**:     Allstate denies the allegations in Paragraph 130.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

131.    Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein. Plaintiffs bring this count on behalf of themselves and the IDNC Class and Subclass.

**ANSWER**:     Allstate incorporates its foregoing answers as if fully set forth herein.

132.    The TCPA requires any party that is engaged in telemarketing – including "sellers" who do not make calls themselves – to maintain and honor a written internal do-not-call policy.

**ANSWER**:     Allstate states that Paragraph 132 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 132.

133.    Allstate's written do-not-call policy and procedures are incorrect and insufficient as to the TCPA's internal do-not-call rules.

**ANSWER**:     Allstate denies the allegations in Paragraph 133.

134.    Allstate's policy and procedures improperly permit calls to phone numbers that are on the internal DNC list, if the caller has "express written invitation or consent."

**ANSWER**:     Allstate denies the allegations in Paragraph 134.

135.    Allstate's policy and procedures do not ensure proper coordination of internal DNC requests among telemarketing or lead vendors or agents, and such coordination does not take place.

**ANSWER**:     Allstate denies the allegations in Paragraph 135.

136.    Allstate's policy and procedures do not ensure adequate or proper internal DNC training.

**ANSWER**:    Allstate denies the allegations in Paragraph 136.

137.    Allstate's policies and procedures do not ensure identification of the seller and telemarketers during calls.

**ANSWER**:    Allstate denies the allegations in Paragraph 137.

138.    Telemarketing calls made on behalf of Allstate are often spoofed, and fail to properly identify Allstate or provide valid contact information.

**ANSWER**:    Allstate denies the allegations in Paragraph 138.

139.    In addition to being a violation of 47 C.F.R. § 64.1200(d), it is a crime to spoof telephone numbers on telemarketing calls, and violators are subject to both a "criminal fine," 47 U.S.C. § 227(e)(5)(B), and possible imprisonment. 47 U.S.C § 501. It is also a crime to knowingly or willfully accept business derived from such.

**ANSWER**:    Allstate states that Paragraph 139 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 139.

140.    Allstate violated the TCPA by not having sufficient internal DNC policies and procedures and/or by not following or honoring those that it did have.

**ANSWER**:    Allstate denies the allegations in Paragraph 140.

141.    Plaintiffs and the IDNC Class and Subclass members received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

**ANSWER**:    Allstate denies the allegations in Paragraph 141.

142.    To the extent that some of the calls to Plaintiffs and the IDNC Class and Subclass were made by agents and/or vendors of Allstate, Allstate is liable for those calls, too.

**ANSWER**:    Allstate denies the allegations in Paragraph 142.

143.    As a result of these violations, Plaintiffs and the IDNC Class and Subclass were damaged by Allstate's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop. Pursuant to Section 227(c)(5) of the TCPA, Plaintiffs and the other members of the IDNC Class and Subclass are therefore each entitled to a minimum of up to $500 in damages for each violation; treble damages if violations are found to have been willful or knowing.

**ANSWER**:    Allstate denies the allegations in Paragraph 143.

WHEREFORE, Plaintiffs Robert Hossfeld and Wes Newman, individually and on behalf of the IDNC Class and Subclass, respectfully requests that the Court enter judgment against Defendant Allstate Insurance Company for:

A.    Certification of the IDNC Class and Subclass as alleged herein;

B.    A declaration that Defendant violated the TCPA as to Plaintiff and the IDNC Class and Subclass;

C.    An injunction to prevent further violations;

D.    Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E.    Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.    Such other or further relief as the Court deems just and proper.

**ANSWER**:    Allstate denies that Plaintiffs are entitled to any of the relief sought in this Prayer for Relief.

<u>**COUNT II**</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(Robocall Violations)**

144.    Plaintiff Newman re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff Newman brings this count on behalf of himself and the Robocall Class.

**ANSWER**:    Allstate incorporates its foregoing answers as if fully set forth herein.

145.    It is a violation of the TCPA to call a cellular or residential telephone number to include or introduce an advertisement or for telemarketing purposes, and play an artificial or prerecorded voice. 47 C.F.R. § 64.1200(a)(2)-(3).

**ANSWER**:    Allstate states that Paragraph 145 calls for a legal conclusion to which no response is required.  To the extent that a response is necessary, Allstate denies the allegations in Paragraph 145.

146.    Allstate initiated or caused to be initiated calls using an artificial or prerecorded voice to the cellular and residential telephone numbers of Plaintiff and the other members of the Robocall Class defined above for telemarketing purposes, i.e., to encourage the purchase of Allstate insurance.

**ANSWER**: Allstate denies the allegations in Paragraph 146.

147.    These calls were made even though Allstate did not have prior express written consent from subscribers who received such calls—as in the case of Newman.

**ANSWER**: Allstate denies the allegations in Paragraph 147.

148.    To the extent that some of the calls to Plaintiff and the Robocall Class were made by agents and/or vendors of Allstate, Allstate is liable for those calls, too.

**ANSWER**: Allstate denies the allegations in Paragraph 148.

149.    As a result of Allstate's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Robocall Class were harmed and are each entitled to a minimum of $500 in damages for each violation; treble damages if violations are found to have been willful or knowing.

**ANSWER**: Allstate denies the allegations in Paragraph 149.

WHEREFORE, Plaintiff Wes Newman, individually and on behalf of the Robocall Class, respectfully requests that the Court enter judgment against Defendant Allstate Insurance Company for:

A.    Certification of the Robocall Class as alleged herein;

B.    A declaration that Defendant violated the TCPA as to Plaintiff and the Robocall Class;

C.    An injunction to prevent further violations;

D.    Damages pursuant to 47 U.S.C. § 227(b)(3), as applicable;

E.    Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.    Such other or further relief as the Court deems just and proper.

**ANSWER**:    Allstate denies that Plaintiffs are entitled to any of the relief sought in this Prayer for Relief.

Allstate further denies all allegations not specifically addressed above and denies that Plaintiffs are entitled to any relief whatsoever.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiffs' Complaint, Allstate prays that: (1) Plaintiffs' Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiffs; and (2) it recover such other relief and additional relief as the Court deems just and appropriate.

38

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Allstate pleads the following defenses to the Complaint:

### First Affirmative Defense
### (Estoppel / Waiver / Unclean Hands)

All or some of Plaintiffs' claims are barred by the doctrines of estoppel, waiver, and/or unclean hands.

### Second Affirmative Defense
### (Failure to State Claim – TCPA)

Plaintiffs fail to state a claim under the TCPA upon which relief can be granted. Plaintiffs fail to allege any damages or concrete harm resulting from his receipt of the calls alleged in the Complaint.

### Third Affirmative Defense
### (Causation – Third-Party Conduct)

Plaintiffs' claims against Allstate are barred in whole or in part because Allstate did not cause any of Plaintiffs' alleged harm. Instead, another party or parties, not Allstate, are liable for Plaintiffs' alleged damages. Allstate did not make the calls of which Plaintiffs complain. The calls alleged in the Complaint were made by third parties. To the extent these calls took place, Allstate did not have sufficient control over said third parties to establish vicarious liability under federal common law. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6574 (2013).

**Fourth Affirmative Defense**
**(Lack of Concrete Harm – Lack of Standing)**

Plaintiffs cannot establish concrete harm. Plaintiffs allege that the Allstate calls "temporarily seized and trespassed upon" their phones and caused them to divert their attention away from other activities. These types of damage allegations do not rise to the level of concrete harm required to confer Article III standing to sue in federal court.

**Fifth Affirmative Defense**
**(Lack of Private Right of Action – 47 C.F.R. § 64.1200(d))**

Plaintiffs' claims rely on 47 C.F.R. § 64.1200(d), which does not create a private right of action.

**Sixth Affirmative Defense**
**(Calls Were Not Made for Telemarketing Purposes or to Residential Lines)**

47 C.F.R. §§ 64.1200(d) requires the calls be made to "residential lines" and for "telemarketing purposes." Plaintiffs admit in their pleading that the calls alleged were not made to a residential line. Further, Plaintiffs cannot establish the alleged "hang-up" calls were made for "telemarketing purposes."

**Seventh Affirmative Defense**
**(Failure to Meet Class Action Requirements)**

All or some of Plaintiffs' claims may be barred, in whole or in part, by Plaintiffs' failure to meet the class action prerequisites for certification and maintenance of a class action. Plaintiffs' Complaint fails to meet the class action prerequisites for maintenance of a class action, including the elements of numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law and fact over individual issues, ascertainability, and superiority over other methods of adjudication.

**Eighth Affirmative Defense**
**(Failure to Mitigate / Causation)**

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate their alleged damages. Plaintiffs' claims may be barred, in whole or in part, because Plaintiffs' own conduct played a role in creating their damages.

**Ninth Affirmative Defense**
**(Compliance)**

At all relevant times, Allstate's policies, practices, and conduct with respect to telemarketing by its exclusive agents, who are independent contractors, have been in compliance with the provisions of the TCPA and all other applicable statutes, regulations, agency decisions, and interpretive case law.

**Tenth Affirmative Defense**
**(Attorneys' Fees)**

Plaintiffs are barred from recovering attorneys' fees, as attorneys' fees are not recoverable under the TCPA.

**Eleventh Affirmative Defense**
**(Consent – Established Business Relationship)**

Plaintiffs' claims are barred to the extent Plaintiffs and/or any putative class members consented to receive telephone calls as alleged in the Complaint. Plaintiffs' claims are barred to the extent that some, or all, of the putative class members had an established business relationship with Allstate. The TCPA and its regulations do not prohibit calls to persons whom the seller has an established business relationship. *See* 47 C.F.R. § 64.1200(f)(5)(i), (f)(14)(ii). "The seller is entitled to call a consumer based on its [established business relationship] with a customer." *Wolfkiel v. Intersections Ins. Services Inc.*, 303 F.R.D. 287, 291 (N.D. Ill. 2014) (citing 18 F.C.C.R. 14014, ¶ 118 (F.C.C. 2003). "The [established business relationship] may extend to third parties

41

in limited cases.  For example, where a company hires third-party telemarketers to market its own services and products, the telemarketers may rely on the seller's [established business relationship] to call an individual consumer." *Id.* (citing 18 F.C.C.R. 14014, ¶ 116 (F.C.C. 2003).

### Twelfth Affirmative Defense
**(Equitable Estoppel)**

By conduct, representations, and omissions, Plaintiffs are equitably estopped from asserting any claim for relief against Allstate.

### Thirteenth Affirmative Defense
**(Additional Defenses)**

Allstate reserves the right to amend these defenses and to add such other and additional defenses, cross-claims, counter-claims, or third-party claims as they may become known during the pendency of this action.

WHEREFORE, Allstate Insurance Company requests that the Court enter judgment in its favor, dismiss Plaintiffs' Complaint in its entirety, and award Allstate its reasonable attorneys' fees and costs and such further relief as this Court deems just and appropriate.

Dated: June 7, 2024                          Respectfully submitted,

**AKERMAN LLP**

*/s/Jani K. Mikel*
**JANI K. MIKEL**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois  60606
Telephone:  (312) 634-5700
Facsimile:  (312) 424-1900
Primary Email: jani.mikel@akerman.com
Secondary Email: molly.batiste-debose@akerman.com

- and -

RYAN ROMAN
*Admitted Pro Hac Vice*
DAVID J. AWOLEKE
*Admitted Pro Hac Vice*
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Primary Email: ryan.roman@akerman.com
Primary Email: david.awoleke@akerman.com
Secondary Email: ellise.peyton@akerman.com
Secondary Email: lauren.chang-williams @akerman.com

*Counsel for Defendant Allstate Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 7, 2024, the foregoing document was filed with the

Court's electronic filing system on the CM/ECF system which will send a notice of electronic

filing to all counsel of record.

> Daniel J. Marovitch
> Alexander H. Burke
> BURKE LAW OFFICES, LLC
> 909 Davis Street, Suite 500
> Evanston, Illinois  60201
> Telephone: (312) 729-5288
> Email: dmarovitch@burkelawllc.com
> Email: aburke@burkelawllc.com

*/s/ Jani K. Mikel*
JANI K. MIKEL
Illinois Bar No. 6331445
