**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT HOSSFELD and
WES NEWMAN, individually and on
behalf of others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

      Defendant.

Case No.: 1:24-CV-02613

## DEFENDANT ALLSTATE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OPPOSED MOTION TO COMPEL DISCOVERY

Defendant Allstate Insurance Company ("Allstate") respectfully files this response in opposition ("Response") to Plaintiffs' Opposed Motion to Compel Discovery [ECF NO. 38] (the "Motion to Compel").

## PRELIMINARY STATEMENT

Allstate is not attempting to skirt or circumvent its discovery-related obligations, nor has it engaged in dilatory tactics "to delay these proceedings through piecemeal discovery disputes and motion practice." Allstate timely filed two motions – a motion to bifurcate discovery due to the unique issues raised by each of the two Plaintiffs in this action and a motion to resolve a dispute involving the parties' stipulated protective order governing the exchange of confidential materials – the purpose of which is to ensure that discovery in this action is conducted in the most efficient and productive manner possible, for which its efforts have been consistently thwarted by the parties' inability to reach a consensus on preliminary discovery-related issues. *See* Motion to

Bifurcate [ECF No. 26] and Motion for Protective Order [ECF No. 29] (collectively the "Discovery Motions"), both of which have been fully briefed and are pending before this Court.

Plaintiffs' Motion to Compel suggests that the Court mooted Allstate's Motion to Bifurcate when it denied Allstate's Motion to Strike Certain Paragraphs of Plaintiffs' Class Action Complaint [ECF No. 20], specific to Plaintiff Newman. However, despite the Court's ruling, the underlying threshold issues of the Motion to Bifurcate still remain—whether Plaintiffs can establish that Allstate made the alleged calls at issue, and whether the denial of class certification in *Robert Hossfeld v. Allstate Insurance Company*, Case No. 1:20-cv-07091 (N.D. Ill.) ("*Hossfeld I*"), covering a similar and overlapping period as the instant litigation implicates a res judicata defense as it relates to the alleged calls made to Plaintiff Hossfeld. Further, although Plaintiffs have since filed an Amended Complaint Class Action ("Amended Complaint") [ECF No. 40], to include additional calls purportedly made to Plaintiff Newman, it has yet to be determined whether such calls were made by Allstate. Bifurcation of discovery is the best approach to ensure orderly justice, allowing the parties time to address and brief the issues concerning the merits of Plaintiffs individual claims, before engaging in expansive and costly class-wide discovery. *See Marshall v. Grubhub Inc.*, No. 19 C 3718, 2022 WL 1055484, at *3 (N.D. Ill. Apr. 5, 2022) ("In TCPA actions, bifurcation may be appropriate where the resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary…or where a narrow, potentially dispositive issue, being totally distinct from class issues, has the potential to render Plaintiff's TCPA claim baseless.").

Plaintiffs' Motion to Compel also suggests that any issues concerning confidentiality or bifurcation of discovery is mooted by Plaintiffs' "compromise offers" to limit the scope of discovery to Plaintiffs' individual claims, and to honor Allstate's confidentiality designations

identified in its proposed confidentiality order set forth in the Motion for Protective Order. Allstate contends that such assurances are, at best, illusory. The critical dispute involving the confidential exchange of documents involves whether Plaintiffs will be allowed to use those documents to solicit absent class members – as they contend – or if the documents should not be permitted to be used for that purpose – as Allstate contends and as the Court ordered in the earlier *Hossfeld I* action. If Allstate receives an adverse ruling, it will potentially have the right to raise such an issue by way of an interlocutory appeal, a right that Allstate would be waiving if it were to agree to Plaintiffs' interim proposal. Resolution of the pending Motion for Protective Order should occur first and, given that the Discovery Motions are fully briefed, there will not be prejudice to Plaintiffs to obtain rulings on the motions prior to the production of confidential documents and/or documents aimed at class-wide discovery.

Accordingly, given the complexity and scope of the claims at issue in Plaintiffs' Amended Complaint [ECF No. 40], and the parties' inability to resolve the ongoing discovery disputes without Court intervention, Plaintiffs' Motion should be denied.

## **ARGUMENT**

### I. **Legal Standard**

The "party moving to compel has the burden of demonstrating the relevance of the discovery sought[.]" *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, 2017 WL 1545764, at *1 (N.D. Ill. Apr. 28, 2017) (citations omitted). While parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, this is "not without limits, and relevancy is perhaps the most important of those limits." *Ossola v. Am. Express Co.*, 2015 WL 5158712, at *4 (N.D. Ill. Sept. 3, 2015) (citations omitted). *See also Franklin v. Howard Brown Health Center*, 2018 WL 450010, at *4 (N.D. Ill.

Sept. 25, 2018) ("Relevance is clearly the threshold and indispensable inquiry … neither before nor after the amendments to rule 26 are 'fishing expeditions' permissible"). Courts have the authority to "confine discovery to the claims and defenses asserted in the pleadings." *Id*. at *3 (citing Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments).

## II.    A Ruling on Bifurcation of Discovery Should be Made Prior to Allstate Producing Documents Related to Class-wide Discovery

Contrary to Plaintiffs' contention, the sole purpose of Allstate's Motion to Bifurcate was not mooted by this Court's *sua sponte* denial of Allstate's Motion to Strike Paragraphs 70-89 of the Complaint [ECF No. 19], as the underlying issues for which the Motion to Bifurcate was predicated still remain—whether the Plaintiffs have valid and sustainable claims against Allstate such that they could serve as class representatives for a putative class action.  Specifically, and among the many concerns to be raised in this matter is the viability of a defense to bar Plaintiff Hossfeld's claims given that the alleged calls at issue in the Amended Complaint were available and could have been brought in *Hossfeld I*, for which he chose not to. The same rings true as it pertains to Plaintiff Newman as there are issues concerning whether the calls he purportedly received were made by or on behalf of Allstate, and much more, whether he provided consent to receive such calls. On these grounds alone, Allstate's Motion to Bifurcate should first be ruled upon before Allstate begins its production of documents relevant to class-wide discovery. *See Grubhub*, 2022 WL 1055484, at *3 ("In TCPA actions, bifurcation may be appropriate where the resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary ... or where a narrow, potentially dispositive issue, being totally distinct from class issues, has the potential to render Plaintiff's TCPA claim baseless." (cleaned up)).

Additionally, Plaintiffs' argument that discovery relating to class certification is closely intertwined with the merits discovery, such that it should not be bifurcated is meritless and

unfounded. *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2024 WL 3633333, at *2 (S.D. Ohio Aug. 2, 2024) ("Given that understanding of the claim, coupled with the other individualized defenses that Cincinnati Bell asserts relating to Kemen and the calls Kemen alleges she received, the Court concludes bifurcating discovery is appropriate. Class discovery is expensive and resource intensive."); *Akselrod v. MarketPro Homebuyers LLC,* No. CV CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (granting the motion to bifurcate discovery and providing that discovery could proceed, in a limited capacity, as to (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether the communications sent to the plaintiff were "telephone solicitations" under the TCPA); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc*., No. 16 C 9281, 2018 WL 3474444, at *6 (N.D. Ill. July 19, 2018) ("Bifurcation is not always warranted in TCPA class actions, nor is it universally appropriate or helpful. But in the circumstances presented here, where some limited, first-stage production could stave off substantial wasted efforts, the Court believes bifurcation is appropriate."); *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case where bifurcation would promote efficiency by permitting discovery on potentially dispositive issues that did not overlap with class issues).

The bifurcation of discovery is the best approach to ensure orderly justice, allowing the parties time to address and brief the issues concerning the merits of Plaintiffs' individual claims, before engaging in expansive and costly class-wide discovery. *See Grubhub*, 2022 WL 1055484, at *3.

### III. A Confidentiality Order and an ESI Protocol Should be Entered Prior to Allstate Producing Confidential Documents Responsive to Plaintiffs' Requests.

Plaintiffs contend that Allstate's production of documents being contingent on the Court's ruling on its Motion for Protective Order is mooted by Plaintiffs' offer to "abide by the terms of Allstate's proposed confidentiality order while Allstate's [Discovery Motions] remain pending." *See* Motion to Compel at 3. The primary relief sought in Allstate's Motion for Protective Order— a confidentiality order containing restrictive language limiting Plaintiffs' use of the personal identifying information provided therein to solicit new plaintiffs – cannot be resolved absent the entry of a Court order. This is because Allstate may have certain appellate rights should such a restriction not issue, and Allstate does not wish to waive such rights in a situation where Plaintiffs are already in receipt of such documents absent a Court order restricting any improper use. In fact, such a restriction is not uncommon. *See Drake v. Aerotek, Inc.*, No. 14-cv-216-bbc, 2014 WL 7408715, at *3 (W.D. Wis. Dec. 30, 2014) (given the "valid concerns about the privacy of the putative class members and the need to take precautions to prevent improper use of the class members' information," the court granted a protective order "limiting plaintiff's use of the contact information to the purposes of [the] litigation."); *Bird Hotel Corp. v. Super 8 Motels, Inc.,* No. Civ. 06–4073, 2007 WL 404703, at *2-3 (D.S.D. Feb. 1, 2007) (holding that "[a] certain amount of discovery is essential in order to determine the certification issue and the proper scope of a class action" but finding no need to contact individual members because all were subject to the same fee at issue in litigation). Even if Plaintiffs temporarily agree to such a condition pending a ruling on the Motion for Protective Order, such guarantees cannot safeguard against the risk of Allstate waiving its right to seek further relief in the event this Court does not implement the proposed restrictive language after having already produced the documents. *See e.g., Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991) (holding that production of documents

without seeking a protective order waives the right to such an order, unless there is a showing of good cause for the delay); *See also United States v. Real Prop. Located in Los Angeles, California*, 345 F.R.D. 189, 193 (C.D. Cal. 2023) ("The precedent that the State of Kuwait asks this Court to set would upend discovery in any litigation where a party is later joined and claims that discovery produced by other parties months or years prior should be retroactively designated as confidential."). In other words, the cat would already be out of the proverbial bag.

It is worthing noting that the ongoing discovery disputes between the parties only emphasize the need for a confidentiality and ESI framework for the orderly production of information. Doing so will facilitate a more predictable, cost- effective, and efficient management of electronic discovery prior to engaging in expansive and exorbitant document production. *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 163 (N.D. Ill. 2023) ("ESI protocols are most effective at the outset of litigation.").

Allstate reiterates its position that it is not seeking to delay discovery in this matter and stands ready to satisfy its discovery obligations consistent with the applicable rules of this Court. Rather, and as it pertains to confidentiality, Allstate is simply seeking entry of a confidentiality order that is consistent with the restrictive language imposed in the confidentiality order by this Court in *Hossfeld I*, which in pertinent part, limits Plaintiffs' use of the confidential and personal identifying information contained in Allstate's production of documents. Allstate is unsure as to why Plaintiff Hossfeld and his counsel would oppose such restrictive language given that the Court's ruling was predicated on a similar motion to compel filed by Plaintiff Hossfeld in *Hossfeld I*, for which the Court's logic and reasoning pertaining to the privacy concerns of the putative class members would also be applicable to the instant class action. Nevertheless, because the parties are unable to find common ground on the issue of confidentiality, Allstate maintains that the

Motion for Protective Order should be decided prior to the obligation to produce documents to safeguard against improper disclosure of Allstate's confidential business information, and improper use of the personal identifying information for the putative class members. Such necessity is also highlighted by Plaintiffs' own recognition that the Court's decision on "the parties' competing confidentiality order proposals … will moot any perceived confidentiality concerns." *See* Motion to Compel at 18 (cleaned up). Accordingly, Plaintiffs' Motion to Compel should be denied.

**IV.    Plaintiffs' Wide-Ranging Class Discovery Should Be Limited During the First Phase to Discovery Concerning the Merits of Plaintiffs' Individual Claims**

Plaintiffs' discovery requests seek sweeping discovery on broad and expansive topics that do not specifically concern Plaintiffs' individual claims against Allstate and go far beyond what is necessary for purposes of pre-certification requirements under Rule 23. The scope of Plaintiffs' proposed discovery, particularly in light of the pre-class certification posture of this case, is beyond the bounds of relevancy, overly broad, unduly burdensome, and not proportional to the needs of this case. As such, the Court should narrow the scope of Plaintiffs' discovery requests to only address the merits of Plaintiffs' individual claims and, at most, to the extent necessary to address class certification requirements.

**a.    *Discovery Seeking All Call Data and Associated Materials and All of Allstate' DNC Lists.***

Plaintiffs seek documents and information related to *all* outbound calls to *any* phone number in the United States made by *anyone* on behalf of Allstate for a span of approximately four years. The scope of these requests, which are detailed below, exceed the bounds of relevancy, are overly broad and unduly burdensome, and are not proportional to the needs of this case.

<u>**Request for Production No. 4**</u>. We understand that Allstate agents are required to maintain records of at least four years of outbound telephone calls (as well as any consent to make such calls), regardless of whether they or someone on their behalf

made such calls. We also understand that such records are required to be provided to Allstate upon request.

Pursuant to such authority, as well as any other similar authority, produce any and all data for any outbound call (e.g. call records, consent records, whether a prerecorded message was involved or played and dnc scrubbing records) made by Allstate, any Allstate agent or agency or any lead generator or telemarketer, for purposes of trying to develop business for Allstate, on or after April 1, 2020.

**Request for Production No. 21**. Produce all communications, data and any other type of documents that concern actual or alleged use of artificial or prerecorded messages during outbound marketing calls....

**Interrogatory No. 1**. Identify the facts, circumstances and persons involved, concerning any instance or allegation of use of any artificial or prerecorded voice during an outbound call, where a purpose of such call was to develop business for Allstate or its affiliates.

**Interrogatory No. 8**. We understand that Allstate agents are required to maintain records of at least four years of outbound telephone calls (as well as any consent to make such calls), regardless of whether they or someone on their behalf made such calls. We also understand that such records are required to be provided to Allstate upon request.

Pursuant to such authority, as well as any other similar authority, identify any and all data for any outbound call (e.g. call records, consent records, whether a prerecorded message was involved or played and dnc scrubbing records) made by Allstate, any Allstate agent or agency or any lead generator or telemarketer, for purposes of trying to develop business for Allstate, on or after April 1, 2020.

**Interrogatory No. 9**. Identify any call responsive to ROG 8, during which any artificial or prerecorded message was played.

**Interrogatory No. 10**. Identify any call responsive to ROG 8, where the number called was on Allstate's internal do not call list at the time of such call.

**Interrogatory No. 11**. Identify any call responsive to ROG 8, where the number called was on any Allstate agency, lead generator or telemarketer's internal do not call list at the time of such call.

Motion to Compel at 4. *See also* SEALED Exhibits A & B to the Motion to Compel [ECF No. 37-1, 37-2], which contain the aforementioned discovery requests and Allstate's responses and objections in full.

Relatedly, Plaintiffs seek *all* internal DNC lists, *all* DNC lists of any agents selling Allstate's products, and *all* logs of scrubbing or other activity concerning internal DC lists:

**Request for Production No. 5.** Produce your internal DNC list.

**Request for Production No. 6.** Produce the internal DNC list of any insurance agency that sells or markets Allstate or any affiliate's goods and/or services.

**Request for Production No. 7**. Produce the internal DNC list for any vendor, telemarketer or lead generator involved in any call responsive to interrogatory 8 and/or RFP 4 [i.e., Plaintiffs' requests for class call data/identification].

**Request for Production No. 24**. Produce a log of any scrubbing or other activity concerning your internal DNC list.

Motion to Compel at 10; Exhs. A & B to Motion to Compel [ECF No. 38-1, 38-2].

Allstate should not be required, particularly at this juncture, to produce discovery that does not go to the merits of Plaintiffs' claims but rather seeks information about purported TCPA violations separate and unrelated to Plaintiffs' individual claims or regarding the merits of potential putative class member's claims. In fact, to the extent that Plaintiffs are seeking information regarding outbound call records and DNC lists to establish numerosity and commonality, Plaintiffs cannot "reverse engineer[]" a class through discovery—which is exactly what Plaintiffs intend to do via the above requests. *In re Human Tissue Prods. Liab. Litig.,* MDL No. 1763, 2007 WL 4117237, at *4-5 (D.N.J. Nov. 13, 2007); *Charles v. Nationwide Mut. Ins. Co., Inc*., No. 09-cv-94, 2010 WL 7132173, at *3-4 (E.D.N.Y. May 27, 2010). Discovery, such as what Plaintiffs are seeking, is not permitted. *Grubhub*, 2022 WL 1055484, at *4 ("Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification."); *Schauf v. Mortgage Bankers Serv. Corp.,* Case No. 01 C 4442, 2001 WL 1654711, at *1, 3 (N.D. Ill. Dec. 20, 2001) (explaining that plaintiff is not permitted to fish for class members or other information in defendant's files with respect to transactions that bore no indicia of an increase to the

defendants' interest rate - which increase was a necessity for the alleged wrongdoing). Indeed, this Court has found that discovery requests, such as the ones Plaintiffs have propounded seeking "any outbound telemarketing calls," are overly broad. *See e.g., Todd v. AGR Group, Inc.,* No. 13 CV 4995, 2014 WL 12708984, at *2 (N.D. Ill. Jan. 13, 2014) (holding a discovery request seeking "information concerning hardware and software services and products used since January 2013 to cause automated or prerecorded messages to be played during any outbound telemarketing calls from AGR" was overly broad).

Courts in this Circuit have also held that, in putative class action lawsuits, overly broad and burdensome discovery into putative class members' claims is not categorically appropriate at the outset of discovery, and that discovery should be limited to the merits of the individual plaintiffs' claims. In *Stavroff v. Midland Credit Mgmt., Inc.,* 2005 WL 6329149 (N.D. Ind. June 8, 2005), the court held that the merits of the plaintiff's individual claim were subject to discovery, but not class certification, because "if Plaintiff cannot prove the merits of his case, then valuable time and resources will be exhausted in trying to resolve the class certification issue" should class discovery proceed. *Id*. at *2; *see also, e.g., Brittingham v. Cerasimo*, Inc., 2008 WL 5156645, at **2-3 (N.D. Ind. Dec. 8, 2008) (limiting initial discovery to merits of plaintiff's individual claims).

Additionally, as other courts have held, "responding to class-wide discovery before the plaintiffs have demonstrated the requirements for class certification frequently presents an undue burden on the responding party." *Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 432 (D.N.M. 2022) (internal quotation marks and brackets omitted). "As applied to class actions," moreover, Rule 23's proportionality standard "supports the notion that pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification." *Miner v. Gov't Payment Serv., Inc.*, Case No. 14-cv-7474, 2017 WL 3909508, at *4 (N.D. Ill. Sept.

5, 2017); *Hall v. Western Refining Retail, LLC*, Case No. 5:19-cv-855-VAP (SKx), 2020 WL 3891469, at *1 (C.D. Cal. May 4, 2020) (class-wide discovery not permissible unless plaintiff makes prima facie showing that class-certification requirements can be met or that proposed discovery is likely to substantiate class allegations).

Here, Plaintiffs' discovery requests go well beyond what is relevant to either Plaintiffs' individual claims or the pre-certification requirements under Rule 23. The expansive requests – for information that spans four years regarding the outbound calls not alleged to have been made to Plaintiffs – is not relevant to the issue of certification, not relevant at this stage of the litigation, and is patently overbroad and unduly burdensome on its face. *Robbins v. NCO Fin. Sys., Inc.*, 2006 WL 3833352, at *5 (N.D. Ind. Dec. 12, 2006) (denying motion to compel information about putative class members). Further, Plaintiffs' sweeping discovery requests for every outbound call made by *anyone* (including agents Plaintiffs have not named or referenced in their pleadings) regarding *any* product sold by Allstate, or business generation for Allstate, is overly broad and unduly burdensome.

Additionally, discovery of entire internal DNC lists by Allstate and any other agent or vendor associated with Allstate is equally wide-sweeping as it does not relate to Plaintiffs or their individual claims but, rather, are sought to compile class members in this action. Notably, Plaintiffs provide clarification, regarding Request No. 6, stating that "they are not seeking the DNC list of agencies that sell Allstate's affiliate's good or services but not Allstate goods or services." [ECF No. 38 at p. 10]. This is a prime example, and gives credence to, the validity of Allstate's position to seek the Court's ruling on the Discovery Motions prior to production of voluminous documents. Had Allstate produced documents responsive to Plaintiffs' overbroad discovery requests, it would have wasted significant time and money producing documents that are no longer

12

relevant to the action, as even Plaintiffs admit. In fact, there are several instances where, via footnotes in the Motion, Plaintiffs agree – for the first time – to limit their requests. *See, e.g.,* Motion to Compel at fn. 12, 16, 19, 24 and 26.

Consequently, the Court should narrow the scope of these requests to address the merits of Plaintiffs' individual claims, as set forth in the Motion to Bifurcate.

### b. *Discovery Seeking Documents of Complaints, Investigations, and Audit Materials.*

Plaintiffs additionally seek overarching information regarding *all* complaints, investigations, and/or audits related to *any* and *all* potential TCPA issues for an unidentified period of time. These requests are quite clearly overly broad and unduly burdensome on their face. And, further, these requests are unrelated to the issue of certification, not relevant at this stage of the litigation and/or to Plaintiffs' individual claims and are overbroad and unduly burdensome.

Plaintiffs made the following requests:

<u>**Request for Production No. 14**</u>. Produce all documents concerning investigations, audits or testing pertaining to TCPA compliance, with regard to the internal Do Not Call regulations and/or use of any actual or alleged artificial or prerecorded voice. Request for Production No. 15. Produce all documents concerning any investigation, audit, allegation, disciplinary action or complaint, concerning use of prerecorded messages during outbound telephone calls the purpose for which was to try to help develop business for Allstate or its affiliates.

<u>**Request for Production No. 17**</u>. Please produce all deposition transcripts, declarations, interrogatory responses, and any other sworn or unsworn materials relating to any instance or allegation that prerecorded or artificial messages were used during telemarketing calls made to develop business for you.

<u>**Request for Production No. 27**</u>. Produce all documents concerning any visits or inspections you or your employees or affiliates made to any agent that dealt with any call alleged in the complaint, or any vendor of theirs relating to telemarketing.

<u>**Request for Production No. 31**</u>. Please produce all communications and documents relating to complaints of any kind (e.g., consumer, regulatory, pre-litigation, litigation), concerning outbound telephone communications to persons who allegedly did not want or consent to receive such calls, and any associated

investigation or action taken by you (or others on your behalf) with regard to such.

**Interrogatory No. 7**. We understand Allstate has a zero-tolerance policy with regard to TCPA and Allstate policy violations. Identify all actions (disciplinary or otherwise) Allstate has taken with regard to employees, agents, agencies, telemarketers or any other person, with regard to this or any similar policy since January 1, 2015.

Motion to Compel at 19; Exhs. A & B to Motion to Compel [ECF No. 38-1, 38-2].

Discovery of *all* investigations, audits, and complaints regarding telemarking not only seeks an overly expansive amount of documents but is also overly broad and is nothing more than a fishing expedition which Courts have admonished and rejected in the past. *See, e.g., Paulcheck v. Union Pac. R.R. Co.,* No. 09 C 4226, 2010 WL 1727856, at *4 (N.D. Ill. Apr. 29, 2010) ("Parties are entitled to a reasonable opportunity to investigate the facts – and no more." (emphasis added; citation omitted)); *id*. at *3-4 (denying motion to compel discovery based on unsupported allegations and finding that plaintiff's discovery requests amounted to nothing more than a "fishing expedition" that the "Seventh Circuit has cautioned against"; explaining "discovery, like all matters of procedure, has ultimate and necessary boundaries. The discovery rules are not a ticket … to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." (internal quotations and citation omitted)); *Heller v. HRB Tax Grp, Inc*., 287 F.R.D. 483, 486 (E.D. Mo. 2012) (granting defendant's motion for a protective order in a TCPA putative class action and noting that requested deposition topics were "beyond the scope of the allegations," and nationwide discovery "would cause [defendant] undue burden and expense").

Additionally, and most importantly, none of the aforementioned requests relate to the named Plaintiffs in this case. And, further, none of the requests relate to the Allstate agents that Plaintiffs allege have made the calls to Plaintiffs. Accordingly, these requests exceed what should be discoverable. *See Lowe*, 2015 WL 13427768, at *2 (N.D. Ill. Feb. 6, 2015) (denying motion to

compel where request sought *"any* complaint regarding *any* automated or prerecorded call, not just ... complaints for violations of the TCPA. This request would encompass automated or prerecorded calls about anything ...."); *Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2019 WL 2271804, at \*9 (S.D. Cal. May 28, 2019) ("Document Request Nos. 11 and 12 seek production of 'all documents containing any communications' between plaintiff or any of his businesses and any person related to any TCPA lawsuit from 2008 through 2018. On their face, these requests are overly broad as to time and scope and have the potential to encompass voluminous documents that have no relevance whatsoever to this case."); *Mey v. Enter. Fin. Group, Inc*., No. 215CV463FTM99MRM, 2016 WL 9110357, at \*7 (M.D. Fla. July 27, 2016) (finding the request seeking all documents related to "any consumer complaints, government investigations, and lawsuits made or filed against You" was overly broad as it was not limited to violations of the TCPA).

Accordingly, the Court should narrow the scope of these requests to only address the merits of Plaintiffs' individual claims.

### c. *Discovery Related to Employees and Third Parties*

Likewise, Plaintiffs' discovery requests seeking the identity, and documents, related to Allstate's employees and unrelated third parties (some of which are not parties to this action, nor are named in Plaintiffs' pleadings), and documents related to any payments to these third parties are beyond the bounds of relevancy, overly broad, unduly burdensome, and not proportional to the needs to the case.

Plaintiffs' requests regarding employees and third parties are as follows:

**<u>Request for Production No. 2.</u>** Produce all documents concerning any insurance agent, telemarketer and/or lead generator(s) associated with the calls alleged in the complaint, with regard to marketing by telephone.

15

**Request for Production No. 13**. Produce all contracts or agreements concerning any insurance agent and/or agency, involved with any call alleged in the Complaint, Dkt. 1.

**Request for Production No. 20**. Produce any organizational chart (or similar document showing hierarchy and/or who does what in what department), for that include persons responsible for TCPA compliance, including the Contact Compliance Team, Brian Bloom, Valerie Lim (and those "above" them), and the Technical Analysts who maintain any do-not-call list.

**Request for Production No. 25.** Produce all communications and documents concerning or relating to any person or entity that calls itself "Free Insurance Quotes."

**Request for Production No. 28**. Produce all documentation concerning payment or any type of remuneration to agencies relating to marketing efforts.

**Interrogatory Nos. 3-4**. Identify all insurance agents and/or agencies that were [or were not] subject to the following [or similar] language in any AGENCY AGREEMENT, and specify the time period when such language was operative [or what language such contracts included concerning Allstate's ability to change the Agency Standards]:

> "the Allstate Agency Standards . . . as they may be amended from time to time, are expressly incorporated in their entirety as part of this Agreement. The Company reserves the right to amend the ... Agency Standards at any time without prior notice to you."

(the above language was taken from Judge Gottschall's order in Hossfeld v. Allstate Ins. Co., 1:2[0]-cv-7091 (N.D.Ill.), Dkt. 282 at 28 (March 28, 2024), and appears at paragraph I.C of a document called "ALLSTATE R3001S EXCLUSIVE AGENCY AGREEMENT."

Motion to Compel at 22; Exhs. A & B to Motion to Compel [ECF No. 38-1, 38-2].

As an initial matter, Plaintiffs admitted to having removed the specific allegations regarding the outfit calling itself "Free Insurance Quotes" from the Amended Complaint. As such, this Court should not allow Plaintiffs permit discovery related to this purported entity as it is now outside of the pleadings and claims made in this case. *Lowe*, 2015 WL 13427768, at *2 (N.D. Ill. Feb. 6, 2015) (denying motion to compel where request was too broad and sought "information that [was] not relevant to plaintiffs' claims, and impose[d] an unnecessary burden" on defendant).

Further, the remaining requests are a classic example of fishing – an improper and disproportional use of discovery. In fact, there is no established relevancy of any of these requests to Plaintiffs' claims, to the defenses raised by Allstate, or to the purported agents who made the calls to Plaintiffs. Accordingly, Plaintiffs should not be permitted to seek information, or documents, related to these requests. *See, e.g., Paulcheck v. Union Pac. R.R. Co.,* No. 09 C 4226, 2010 WL 1727856, at *4 (N.D. Ill. Apr. 29, 2010) ("Parties are entitled to a reasonable opportunity to investigate the facts-and no more." (emphasis added) (citation omitted)); *id*. at *3-4 (denying motion to compel discovery based on unsupported allegations and finding that plaintiff's discovery requests amounted to nothing more than a "fishing expedition" that the "Seventh Circuit has cautioned against"; explaining "discovery, like all matters of procedure, has ultimate and necessary boundaries. The discovery rules are not a ticket . . . to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." (internal quotations and citation omitted)); *see also Heller v. HRB Tax Grp, Inc*., 287 F.R.D. 483, 486 (E.D. Mo. 2012) (granting defendant's motion for a protective order in a TCPA putative class action and noting that requested deposition topics were "beyond the scope of the allegations," and nationwide discovery "would cause [defendant] undue burden and expense.").

Accordingly, the Court should narrow the scope of these requests to only address the merits of Plaintiffs' individual claims.

## V.    Allstate Intends to Produce Further Documents Upon the Court Ruling on the Discovery Motions

As stated above, Allstate does not object to producing – and in fact intends to produce – responsive, nonprivileged information and documents upon the Court's ruling on the Discovery Motions. Allstate merely requests that the scope of discovery be limited to only those requests that concern the merits of Plaintiffs' individual claims and those that are necessary to satisfy the

prerequisites for class certification during the first stage of bifurcated discovery. This includes, but is not limited to, requests seeking Allstate's policies pertaining to the TCPA.

Allstate does not contest the relevancy of these requests, nor does it object to producing them generally. Instead, it seeks that this Court first rule on the Motion for Protective Order. This is necessary as the information, and documents sought, necessarily include confidential, proprietary, and potentially trade secret information. *See 100Reporters LLC v. United States Dep't of Justice*, 248 F. Supp. 3d 115, 144 (D.D.C. 2017) (holding documents such as internal compliance policies, training presentations, training modules, and other related materials are confidential in nature); *Burke v. Ability Ins. Co*., No. CIV. 12-4051-KES, 2013 WL 842512, at *5 (D.S.D. Mar. 6, 2013) (entering a protective order governing the internal policies and procedures of AIC because those documents were necessarily confidential). Disclosure of such documents and information, without the proper protections of a Confidentiality Order in place, could cause irreparable harm to Allstate.

Again, Allstate notes that Plaintiffs provide clarification to these requests in footnote 16, wherein they limit the temporal scope of the documents being sought. Had Allstate engaged in, and undertaken efforts to comply and produce documents responsive to Plaintiffs' discovery requests, which were ultimately determined to irrelevant to the claims at issue, it would have been a waste of significant time, costs, and resources. This only emphasizes the overly broad and unduly burdensome nature of Plaintiffs' requests.

Similarly, Plaintiffs' requests seek documents related to Allstate's affirmative defenses including:

> **<u>Request for Production No. 8</u>**. Produce any documents or data showing that you or any affiliate of yours had any sort of permission – including prior express written consent – to telemarket to any phone number response to ROG 8 or RFP 4, on behalf of Allstate or any affiliate.

**Request for Production No. 9.** Produce all documents concerning Allstate agents' compliance or non-compliance with E-Sign, with regard to the TCPA or written consent.

**Request for Production No. 10.** Produce all policies, practice or procedure-related documents that mention or pertain to agent compliance with E-Sign, generally.

**Request for Production No. 16**. Please produce all documents and data supporting, relating to or refuting any affirmative defense raised in this action.

**Request for Production No. 19**. Produce any documents supporting, relating to or refuting that you had consent or permission to make outbound calls using artificial or prerecorded messages, the purpose for which was to try to help develop business for Allstate or its affiliates.

**Request for Production No. 22**. Please produce all financial statements, audited and unaudited, applications for credit and all other forms of documentation of your financial well-being, since 2015.19 You may omit a response to this request if you state in your response that you do not contend that damages in this case are unconstitutional, annihilating or otherwise too high.

**Request for Production No. 32**. Produce all documents that concern parameters or instructions for prior express consent, with regard to TCPA compliance. Include data parameters for Jornaya, TrustedForm and similar services.

Motion to Compel at 16; Exhs. A & B to Motion to Compel [ECF No. 38-1, 38-2].

Allstate does not contest the relevancy of these requests, nor does it object to producing them, generally. Rather, it seeks that this Court first rule on the Discovery Motions, and that the parties agree on the ESI Protocol.

Further, Plaintiffs' requests necessarily seek documents, and information, that may not be within Allstate's control as they are within the possession of its agents and sub-vendors. Allstate cannot search for, and produce, documents maintained by an independent company that are not within its possession, custody or control. *See Lowe*, 2015 WL 13427768, at *4 (N.D. Ill. Feb. 6, 2015) (court cannot compel party to produce information or documents that it does not have).

19

Allstate, once more, notes that Plaintiffs provide clarification to these requests in footnote 19, 24, and 26 limiting the temporal scope of what is sought. As previously stated, had Allstate engaged in, and undertaken efforts to comply and produce documents responsive to Plaintiffs' discovery requests it would have wasted significant time and money to produce documents that were irrelevant to the matters at hand.

Lastly, Plaintiffs seek information related solely to Plaintiffs "**<u>Request for Production No. 1</u>**. Please produce all documents, records, data, recordings and other materials relating to Wes Newman, Robert Hossfeld, [Plaintiffs' phone numbers], or which are indexed, filed, or retrievable under them or any associated number, symbol, designation or code (such as an account number or Social Security number)." [ECF No. 38 at p. 24-25]. As with the other requests noted in this section, Allstate does not object to relevancy of this request, nor does it object to producing it generally. Rather, it seeks that this Court first rule on the Discovery Motions which, most importantly, include the Motion for Protective Order which will result in the parties entering into a Confidentiality Order. This is necessary as the information, and documents sought includes confidential personal identifying information and also confidential Allstate documents.

Accordingly, Allstate does not object to producing—and intends to produce—responsive, nonprivileged information and documents upon the Court ruling on the Discovery Motions. Allstate merely requests that the scope of discovery, and production of documents, be limited to only address the merits of Plaintiffs' individual claims and the prerequisites for class certification.

<u>**CONCLUSION**</u>

WHEREFORE, Defendant Allstate Insurance Company respectfully requests that the Court deny Plaintiffs' Motion to Compel and grant Allstate such other and further relief as the Court deems proper.

Dated: December 19, 2024              Respectfully submitted,

**AKERMAN LLP**

*/s/Jani K. Mikel*
**JANI K. MIKEL**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois  60606
Telephone:  (312) 634-5700
Facsimile:  (312) 424-1900
Primary Email: jani.mikel@akerman.com
Secondary Email: molly.batiste-debose@akerman.com

- and -

RYAN ROMAN
*\* Admitted Pro Hac Vice*
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Primary Email: ryan.roman@akerman.com
Secondary Email: sharon.luesang@akerman.com
Secondary Email: lauren.chang-williams @akerman.com

*Counsel for Defendant Allstate Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on December 19, 2024, the foregoing document was filed with

the Court's electronic filing system on the CM/ECF system which will send a notice of electronic

filing to all counsel of record.

      Daniel J. Marovitch
      Alexander H. Burke
      BURKE LAW OFFICES, LLC
      909 Davis Street, Suite 500
      Evanston, Illinois  60201
      Telephone: (312) 729-5288
      Email: dmarovitch@burkelawllc.com
      Email: aburke@burkelawllc.com

                              */s/ Jani K. Mikel*
                              JANI K. MIKEL
                              Illinois Bar No. 6331445