**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WES NEWMAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, ROSE GRANADOS, individually and d/b/a ROSE GRANADOS ALLSTATE INSURANCE AGENCY, and US AUTO INSURANCE, a business entity of presently unknown legal form,<br><br>Defendants. | ) | Case No. 1:24-cv-02613<br><br>Hon. Judge Jeffrey I. Cummings<br>Hon. Mag. Judge Jeffrey Cole<br><br>JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**
**CLASS ACTION**

1. Plaintiff Wes Newman has asked Allstate not to call him for telemarketing, and Allstate placed his residential cellular telephone number on its company-specific do-not-call list no later than August 30, 2021. That request remained within the five-year period prescribed by 47 C.F.R. § 64.1200(d)(6) throughout the calls challenged here.

2. This case is intentionally narrow. It concerns a single Allstate agency - the Rose Granados Allstate Insurance Agency in Pearland, Texas - and the lead generator that identified itself as US Auto Insurance and generated insurance leads for that agency.

3. On February 5, 2026, Newman received a prerecorded telemarketing call from US Auto Insurance. The call was transferred through a live qualifier to an Allstate representative, and the resulting Allstate insurance quote was issued through the Rose Granados agency.

4. On May 15, 2026, the Granados agency itself called Newman from the telephone number Allstate publicly lists for that agency. The caller asked for the same pseudonym

Newman had used during the February lead call and expressly said she was following up on the earlier quote. Upon information and belief, the Granados agency called Plaintiff at least once more on May 15, 2026.

5. The May call presents a discrete issue under the TCPA internal do-not-call rules. Allstate has a written policy allowing its agents to resume telemarketing to a number on Allstate's do-not-call list when the consumer later makes an inquiry or provides an express written invitation or consent. Plaintiff contends that 47 C.F.R. § 64.1200(d) contains no such consent-based exception to the requirement that a company-specific do-not-call request be honored for five years.

6. Plaintiff seeks certification under Rule 23(c)(4) of that discrete legal issue for persons who received Granados telemarketing calls under the same policy. Plaintiff does not presently seek certification of every remaining issue bearing on liability under the internal do-not-call rules.

7. Separately, Plaintiff seeks certification under Rule 23(b)(3) of a conventional damages class arising from prerecorded telemarketing calls made by US Auto Insurance to generate leads or live transfers for the Granados agency without the prior express written consent required by the TCPA.

**Parties**

8. Plaintiff Wes Newman is a natural person who resided in Cook County, Illinois at all relevant times to these allegations. He is the subscriber and regular user of the personal cellular telephone number that received the calls alleged here. The number is used for residential and personal purposes, not for business, and has been registered on the National Do Not Call Registry since 2005.

9. Defendant Allstate Insurance Company is a Delaware corporation headquartered in Northbrook, Illinois. Allstate sells personal insurance through a nationwide network of insurance agents, including Rose Granados.

10. Defendant Rose Granados operates the Rose Granados Allstate Insurance Agency at 9639 Scarsdale Boulevard, Suite 101, Pearland, Texas 77581. Allstate publicly identifies Rose Granados as an Allstate insurance agent and lists 281-481-4183 as the agency telephone number. The precise legal form of the agency is presently unknown, and this Complaint refers to Rose Granados and her agency collectively as "Granados."

11. Defendant US Auto Insurance is a telemarketing and lead-generation business that identified itself by that name during the calls alleged below. Its precise legal name, organizational form, and address are presently unknown because its callers did not provide that information. Plaintiff will amend the name of this Defendant when discovery identifies the responsible legal entity.

**Jurisdiction and Venue**

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

13. This Court has personal jurisdiction over Allstate because its principal place of business is in this District. The Court has specific personal jurisdiction over Granados and US Auto Insurance because they purposefully directed the telemarketing conduct alleged here to Newman in Illinois and the claims arise from that conduct.

14. Venue is proper under 28 U.S.C. § 1391 because Allstate resides in this District, Newman received the challenged calls in this District, and a substantial part of the events giving rise to the claims occurred here.

**The TCPA and Allstate's Telemarketing System**

15. The TCPA's internal do-not-call regulation provides that no person or entity may initiate telemarketing to a residential telephone subscriber unless it has instituted procedures for maintaining a list of persons who request not to receive calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

16. Those procedures must, among other things, include a written do-not-call policy, training, prompt recording and honoring of do-not-call requests, identification during calls, and maintenance of do-not-call requests for five years. 47 C.F.R. § 64.1200(d)(1)-(6).

17. The TCPA permits a person who receives more than one telephone call within a twelve-month period by or on behalf of the same entity in violation of regulations prescribed under 47 U.S.C. § 227(c) to seek injunctive relief and statutory damages. 47 U.S.C. § 227(c)(5).

18. The TCPA also generally prohibits telephone solicitations to residential telephone subscribers whose numbers have been registered on the National Do Not Call Registry for more than 31 days. 47 C.F.R. § 64.1200(c)(2).

19. The TCPA separately restricts telemarketing calls using an artificial or prerecorded voice to cellular and residential telephone numbers absent the permission required by the regulations. 47 C.F.R. § 64.1200(a)(2)-(3).

20. Allstate sells insurance through insurance agents and agencies. Its form agency agreements incorporate Allstate Agency Standards and reserve to Allstate the right to change those standards. Allstate may enforce the standards against its agents, including through termination.

21. Although Allstate contracted with its agents, including Granados, to have the power to discipline and terminate for TCPA-related infractions, and although Allstate purports to have a "zero tolerance" policy for such, Allstate has never disciplined or terminated any agent for such despite facing multiple TCPA class actions arising from Allstate agents' telemarketing activities

including through third party lead generators and warm transfers.

22. Allstate's Agency Standards policy document regulates telemarketing. It incorporates Allstate do-not-call requirements, require compliance with the TCPA and other laws, and addresses the use of outside providers for telephone marketing.

23. Allstate dictates the telemarketing standards used, requires agent telemarketers to comply with them, controls which vendors may be used by prohibiting identified vendors, reserves the right to change the standards and may terminate agents for noncompliance.

24. Allstate permits its agents to use outside telemarketing providers to generate leads for Allstate insurance, and Allstate knows that its agents do so regularly.

25. Allstate's Agency Standards authorize Allstate agents – including Granados – to engage non-contracted telemarketers to initiate consumer calls encouraging the purchase of Allstate products, provided the agent and telemarketer comply with Allstate's standards.

26. It is typical, normal and expected within the consumer insurance (e.g. auto, homeowners, etc.) industry for insurance agents to engage third party vendors to assist with telemarketing.

27. It is typical, normal and expected within the consumer insurance industry for third-party telemarketing vendors to engage subvendors to assist with their telemarketing efforts.

28. At the same time, Allstate has maintained lists of vendors its agents may not use and has required agents to ensure that outside providers comply with Allstate policies and applicable law.

29. Upon information and belief, US Auto Insurance is not on Allstate’s list of prohibited vendors, even though Allstate is aware of this lead generator and – on information and belief – has received complaints concerning vendors using this name.

30. Plaintiffs here do not rely on an unlimited chain of subagency. Where a call was made directly by an Allstate agency or its personnel, Plaintiffs allege that conduct is attributable to Allstate under ordinary agency principles. Where an outside caller generated or transferred the call, Plaintiffs allege vicarious liability only to the extent discovery shows authority at each required level.

31. Separately, Plaintiffs allege that Allstate is directly responsible for its own failure to institute and implement do-not-call procedures sufficient to prevent telemarketing made by or on its behalf to persons who had already asked Allstate not to call, and for failing to enforce its own policies and for failing to meaningfully oversee and discipline its agents and vendors' telemarketing and TCPA compliance.

32. Allstate's written do-not-call policies have permitted calls to company-specific do-not-call numbers when a later inquiry is evidenced by an express written invitation or consent. Allstate's April 2024 policy, for example, states that a caller should not initiate a solicitation to a number on "your company-specific DNC list" unless the consumer made a later inquiry evidenced by an express written invitation or consent.

33. Plaintiffs allege that this policy is inconsistent with 47 C.F.R. § 64.1200(d), which requires a do-not-call request to be maintained and honored for five years and does not create a general exception allowing telemarketing merely because the consumer later made an inquiry or allegedly consented.

34. Plaintiffs further allege that Allstate's use of agency-specific and vendor-specific do-not-call processes has failed to ensure that requests to stop Allstate telemarketing are honored throughout the system used to generate calls, leads, and transfers for Allstate insurance.

35. The repeated calls to Plaintiffs after direct notice to Allstate and identified Allstate

agencies demonstrate that the problem is not limited to a single caller or a single vendor.

36. For enhanced damages, Plaintiffs will apply the standard announced by the Seventh Circuit: a violation is willful or knowing when it is committed knowingly or recklessly, including when the risk of violation is serious and eminently avoidable and is known or so obvious that it should be known. Hossfeld, slip op. at 18-19.

**Newman's Do-Not-Call Request**

37. Newman made company-specific do-not-call requests to Allstate before the calls alleged here. Allstate recorded Newman's telephone number on its internal do-not-call list no later than August 30, 2021.

38. Newman thereafter continued to notify Allstate that he did not want telemarketing calls, including by communicating directly with Allstate concerning unwanted Allstate telemarketing. Newman never withdrew his company-specific do-not-call request.

39. The February and May 2026 calls alleged below therefore occurred within five years of Newman's recorded Allstate do-not-call request.

**The Granados Lead-Generation Calls**

40. On February 5, 2026, at approximately 3:39 p.m., Newman received a call on his residential cellular telephone. The call began with a prerecorded voice from a caller using the name "Harry."

41. Harry stated that insurance premiums had increased and that consumers were comparing rates. When Newman asked for the company name, the prerecorded voice identified the business as "US Auto Insurance" and represented that rates had dropped by as much as 35 percent.

42. The prerecorded message asked qualifying questions and transferred Newman to a live representative named Mark. Mark asked additional insurance-related questions and then said he would transfer Newman to an agent "despite your number on any do not call list."

43. Mark then connected Newman with Ivan, who identified himself as being with Allstate and discussed Allstate insurance pricing with Newman.

44. Newman continued the call to identify the Allstate agency receiving the lead. He asked Ivan to send the quote by email and supplied a pseudonym for that purpose.

45. Arising from this call, Allstate issued an insurance quote through the Rose Granados Allstate Insurance Agency, and Ivan emailed that Granados quote to Newman the same day.

46. Newman had not provided US Auto Insurance, Granados, or Allstate with prior express written consent to place prerecorded telemarketing calls to his cellular telephone. The February 5 call itself was unsolicited; any inquiry or quote request occurred only after the prerecorded call had already been initiated and answered.

47. The next day, February 6, 2026, Newman received another prerecorded insurance telemarketing call. The prerecorded caller used the name "Michael" and, after qualifying Newman, transferred him to a live woman who identified the company as US Auto Insurance.

48. The February 6 caller asked for the same Hickman pseudonym used in connection with the Granados quote, repeated materially the same unusual statement about proceeding despite Newman's number being on a do-not-call list, and used the same hold music as the prior US Auto Insurance sequence. On information and belief, this was a second call from the same US Auto Insurance campaign that had generated the Granados lead the day before.

49. Plaintiff alleges the February 6 call as part of the same Granados lead-generation campaign and as further evidence identifying US Auto Insurance as the lead generator. Plaintiff will use Defendants' call-detail, lead-routing, and transfer records to establish the precise routing of this call.

**Granados Follow-Up Calls**

50. On May 15, 2026, at approximately 2:16 p.m., Newman received a telemarketing call from caller ID 281-481-4183.

51. Allstate publicly lists 281-481-4183 as the telephone number for the Rose Granados Allstate Insurance Agency in Pearland, Texas.

52. The caller identified herself as being with Allstate, asked to speak with "Mr. Hickman," and said she was calling about the insurance quote that had previously been sent to him. She asked whether Newman remained interested in that quote.

53. The caller's use of the Hickman pseudonym and reference to the prior quote confirmed that the Granados agency had retained and was using the lead and quote information generated by the February 5 US Auto Insurance call.

54. Newman told the caller that he had reported the prior call to his attorney in this TCPA litigation and asked whether anyone had told her not to contact him. She said no one had. The call then ended.

55. The May 15 call was a telemarketing call made by the Granados agency itself for the purpose of selling Allstate insurance. It was made while Newman's Allstate company-specific do-not-call request remained within the five-year period required by § 64.1200(d)(6).

56. Plaintiff then received another telemarketing call on May 15, 2026, from the Granados Allstate Insurance Agency.

57. The February 6 and May 15 calls occurred after Newman participated in the February 5 quote process. Defendants therefore may contend that the intervening quote inquiry or purported consent permitted renewed calling notwithstanding Newman's preexisting do-not-call request. Plaintiff contends that § 64.1200(d) permits no such override during the five-year period.

**Agency and Responsibility for the Granados Campaign**

58. Granados sells Allstate insurance as an Allstate agent. On information and belief, Granados operates pursuant to the same or materially similar form Allstate agency agreement and Agency Standards applicable to Allstate's other exclusive agents.

59. Through those agreements and standards, Allstate manifests its assent that its agents act on Allstate's behalf in marketing and selling Allstate insurance and subjects their telemarketing activities to Allstate's requirements and control. Among other things, Allstate prescribes telemarketing and do-not-call standards, requires compliance with those standards, regulates agents' use of outside telemarketing providers, identifies providers that agents may not use, and reserves enforcement rights against agents that fail to comply.

60. Critically, Allstate expressly permits its direct insurance agents to engage non-contracted telemarketers to initiate calls to consumers for the purpose of encouraging the purchase of Allstate products and services, provided that the agent and telemarketer comply with Allstate's Agency Standards and incorporated do-not-call requirements. Allstate thereby authorizes its agents, including Granados, to appoint outside telemarketers to perform telemarketing functions the agents are authorized to perform for Allstate.

61. On information and belief, Granados exercised that authority by retaining, engaging, or otherwise authorizing US Auto Insurance to solicit and qualify prospective purchasers and generate live transfers and leads for the Granados agency.

62. US Auto Insurance accepted that appointment and acted within the authorized telemarketing function when it initiated the prerecorded calls alleged here. On February 5, US Auto Insurance solicited Newman for automobile insurance, qualified him, and transferred the resulting lead into an Allstate sales interaction that produced an Allstate insurance quote issued through the Granados agency that same day.

63. The Granados agency thereafter retained and used the information generated through that call. On May 15, the Granados agency itself called Newman from its published Allstate agency number, asked for the same pseudonym Newman had supplied during the February solicitation, and expressly stated that it was following up on the Granados quote generated through that interaction.

64. These facts support the inference that US Auto Insurance was not an unrelated caller that happened to generate interest in Allstate insurance. It was performing the lead-generation and telemarketing function Granados authorized it to perform for the Granados agency, and the resulting lead and consumer information flowed directly into Granados's Allstate sales process.

65. Plaintiff alleges that US Auto Insurance itself initiated the prerecorded calls challenged in Count II. Plaintiff does not rely upon an unidentified further delegation from US Auto Insurance to another caller. Accordingly, unlike the additional delegation addressed in *Hossfeld v. Allstate Insurance Co.*, the agency chain alleged here requires only the authority Allstate granted Granados to appoint an outside telemarketer and Granados's exercise of that authority in appointing US Auto Insurance.

66. US Auto Insurance is directly liable for the prerecorded calls it initiated. Granados is vicariously liable because US Auto Insurance initiated those calls as Granados's

authorized telemarketing agent. Allstate is vicariously liable because Granados acted as Allstate's agent in appointing US Auto Insurance to perform telemarketing that Allstate authorized Granados to conduct on Allstate's behalf.

**Class Allegations**

67. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(c)(4). Both proposed classes are limited to calls made by or on behalf of the Rose Granados Allstate Insurance Agency.

68. Plaintiff seeks certification under Rules 23(b)(3) and 23(c)(4) of the following Granados IDNC Consent-Issue Class:

> All persons in the United States who, (a) had a residential telephone number recorded on Allstate's company-specific do-not-call list based on a request made within the preceding five years; (b) received more than one telemarketing call within a twelve-month period made by or on behalf of the Rose Granados Allstate Insurance Agency; and (c) where the telephone number was not scrubbed against Allstate's internal DNC List before such call, or placement of the phone number on Allstate's internal DNC List was ignored because the caller believed it had consent.

69. For the Granados IDNC Consent-Issue Class, Plaintiff seeks certification only of the following issue: whether 47 C.F.R. § 64.1200(d) permits a seller, agent, or telemarketer to treat a consumer's later inquiry, express written invitation, consent, or purported consent as extinguishing, suspending, or overriding an existing company-specific do-not-call request before the regulation's five-year period expires.

70. That issue is common to every member of the Consent-Issue Class. It turns on the meaning of one federal regulation and on the legality of the same Allstate policy governing Granados telemarketing, rather than on the circumstances of individual calls.

71. Plaintiff does not presently seek class certification under Count I as to all other elements of liability or damages. Those matters may be resolved individually or through such further proceedings as the Court determines appropriate after resolution of the certified issue.

72. Plaintiff also seeks certification under Rule 23(b)(3) of the following Granados Robocall Class:

> All persons in the United States who, through the date of certification, received on a cellular telephone a telemarketing call using an artificial or prerecorded voice that was initiated by US Auto Insurance for the purpose of generating a lead or live transfer to the Rose Granados Allstate Insurance Agency, where Defendants' records do not contain documentation that the person agreed to receive such call.

73. Excluded from both classes are Defendants; their officers and directors; members of the immediate families of the judicial officers assigned to this case; and any person who timely and validly requests exclusion from a class for which exclusion rights apply.

74. The proposed classes are sufficiently numerous that joinder is impracticable. US Auto Insurance used a standardized prerecorded lead-generation campaign, and the number and identities of recipients can be determined from Defendants' call-detail, lead-routing, transfer, quote, and customer-management records. Plaintiff alleges on information and belief that each proposed class contains at least forty members.

75. Common questions for the Consent-Issue Class include the meaning of § 64.1200(d), whether its five-year command permits a consent- or inquiry-based exception, whether Allstate's written policy creates such an exception, and whether that policy governed Granados telemarketing. Common questions predominate in resolving the discrete issue proposed for certification.

76. Common questions for the Granados Robocall Class include whether US Auto Insurance used the same artificial or prerecorded voice technology; whether the calls were telemarketing; whether they were made to cellular numbers to generate Granados leads; whether Defendants possessed prior express written consent satisfying the FCC's requirements; and the

agency relationships governing the campaign. Those questions are capable of classwide resolution using common evidence.

77. Newman's claims are typical. He was on Allstate's company-specific do-not-call list, later participated in a Granados quote inquiry, received a Granados follow-up call during the five-year period, and received prerecorded US Auto Insurance calls used to generate Granados business without prior express written consent.

78. Newman will fairly and adequately protect the classes. His interests are aligned with the class members, and he has retained counsel experienced in TCPA and consumer class-action litigation.

79. A class action is superior for the Granados Robocall Class because the claims arise from a standardized campaign, statutory damages are modest compared with the cost of individual litigation, and common records can identify the relevant calls and recipients.

80. Issue certification is superior and efficient for the Consent-Issue Class because the legality of Allstate's consent override is a discrete question whose answer will be the same for every class member. Resolving it once will materially advance the litigation even if other elements later require individualized adjudication.

**Count I - TCPA Internal Do-Not-Call Violations**
**47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)**

81. Plaintiff re-alleges the preceding paragraphs. He brings this Count individually and seeks Rule 23(c)(4) certification of the discrete consent issue described above for the Granados IDNC Consent-Issue Class.

82. Newman is a residential telephone subscriber and made a company-specific do-not-call request to Allstate that Allstate recorded no later than August 30, 2021. That request

remained within the five-year period prescribed by § 64.1200(d)(6) when the February and May 2026 calls occurred.

83. Within a twelve-month period, Newman received more than one telemarketing call made by or on behalf of the same entity, Granados, including the February 5, 2026, US Auto Insurance call that generated a Granados quote and the May 15, 2026, calls placed by the Granados agency itself to pursue that quote. Those calls were also made to sell Allstate insurance and, as alleged, were made by or on behalf of Allstate.

84. The February 6, 2026, US Auto Insurance call was an additional call within that same twelve-month period and, on information and belief, was part of the same Granados lead-generation campaign.

85. Defendants did not honor Newman's company-specific do-not-call request for five years. To the extent Defendants contend Newman's participation in the February quote process authorized later telemarketing, Plaintiff alleges that § 64.1200(d) does not permit a later inquiry or consent to extinguish or override an existing company-specific do-not-call request during the five-year period.

86. US Auto Insurance is liable for calls it initiated. Granados is liable for the May 15, 2026, calls it initiated and for telemarketing initiated by its authorized lead generator. Allstate is liable to the extent Granados and US Auto Insurance acted as Allstate agents or authorized subagents within the scope of authority Allstate granted for agency telemarketing.

87. Defendants' conduct was knowing or reckless to the extent discovery proves they knew of the applicable do-not-call request or consciously disregarded the regulatory requirement. Among other facts, a US Auto Insurance representative expressly referred to

proceeding despite a do-not-call listing, Allstate itself maintained Newman on its do-not-call list, and Granados later used the resulting lead to contact Newman directly.

88. Under 47 U.S.C. § 227(c)(5), Newman seeks statutory damages for each actionable violation, enhanced damages where the statutory standard is satisfied, appropriate injunctive relief, and judgment on the certified Rule 23(c)(4) issue.

**Count II - Prerecorded Telemarketing Calls to Cellular Telephones**
**47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2)**

89. Plaintiff re-alleges the preceding paragraphs. He brings this Count individually and on behalf of the Granados Robocall Class under Rule 23(b)(3).

90. US Auto Insurance initiated telemarketing calls to Newman's cellular telephone using an artificial or prerecorded voice, including the February 5, 2026 call and the February 6, 2026 call.

91. The calls advertised or promoted insurance and were made for the purpose of generating insurance leads or live transfers for the Granados agency and Allstate.

92. Newman did not provide prior express written consent to receive those prerecorded telemarketing calls. Any participation by Newman in the February 5 quote process occurred after the prerecorded call had already been initiated and therefore could not constitute prior consent for that call.

93. US Auto Insurance is directly liable for the prerecorded calls it initiated. Granados is liable under agency principles for prerecorded calls made within the authorized Granados lead-generation campaign, and Allstate is liable to the extent Granados and US Auto Insurance acted within actual agency or subagency authority granted by Allstate.

94. The same conduct was repeated across the Granados Robocall Class through a standardized prerecorded lead-generation campaign. Liability and damages can be determined from common call records, transfer records, lead records, quote records, and consent records.

95. Under 47 U.S.C. § 227(b)(3), Newman and the Granados Robocall Class seek $500 in statutory damages for each violation and up to $1,500 per violation proven to have been willful or knowing, together with appropriate injunctive relief.

**Prayer for Relief**

WHEREFORE, Plaintiff Wes Newman, individually and on behalf of the proposed classes, respectfully requests that the Court enter judgment in his favor and against Defendants and:

A. Certify the Granados IDNC Consent-Issue Class under Rules 23(a), 23(b)(3), and 23(c)(4) as to the discrete issue stated above, and appoint Newman as class representative and his counsel as class counsel for that issue;

B. Certify the Granados Robocall Class under Rules 23(a) and 23(b)(3), and appoint Newman as class representative and his counsel as class counsel;

C. Enter judgment on the certified issue that 47 C.F.R. § 64.1200(d) does not permit a later inquiry, express written invitation, consent, or purported consent to extinguish, suspend, or override an existing company-specific do-not-call request before the five-year period expires;

D. Award Newman statutory damages under 47 U.S.C. § 227(c)(5) for the actionable internal do-not-call violations;

E. Award Newman and the Granados Robocall Class statutory damages under 47 U.S.C. § 227(b)(3);

F. Increase statutory damages for violations proven to have been willful or knowing to the extent authorized by the TCPA;

G. Enter appropriate injunctive relief preventing further violations of the TCPA;

H. Award costs and any other relief available by law; and

I. Grant such other and further relief as the Court deems just and proper.

**Jury Demand**

Plaintiff demands a jury trial on all claims and issues so triable.

Dated: November 11, 2026

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com

Counsel for Plaintiff